Mr. Justice CLIPPOKU
 

 delivered the opinion of the court.
 

 Deputy postmasters, where the commissions allowed to the office amount to or exceed one thousand dollars, are ap-. pointed by the President, by and with the advice and consent of the Senate, and hold their offices for the term of four years, unless sooner removed bj^ the President.
 
 *
 

 Principal defendant was, on the sixteenth day of July, 1861, duly appointed in that manner deputy postmaster at Kensington, in the County of Philadelphia; and the record shows that he was in the performance of the duties of that office on the thirteenth day of March, 1862, when the same was decided to be unnecessary by the Postmaster-General, and was discontinued. "When appointed, he gave bond with sureties as required by law for the faithful performance of his duties, and that he would render a quarter-yearly account of receipts and expenditures, and pay over to the proper officer the balance of all moneys which should come to his hands for postages, in the manner prescribed by the department.
 

 Substantial charge against the defendant was, that he had neglected and refused to pay over certain moneys received for postages, as exhibited in his quarterly accounts for the
 
 *626
 
 last two quarters next preceding the discontinuance of the office. Refusing to pay over those sums, the United States sued him in an action of debt, declaring on his official bond against him and his surety.
 

 Defendants appeared and pleaded several pleas; hut it is unnecessary to refer particularly to any one of them except the second, as all the others resulted in issues of fact, and present no question for decision in this record. Second plea of the defendants alleged that the postages annually received at that office amounted to a sum which authorized an annual .allowance to him of two thousand dollars, and entitled him to retain that sum, as and for commissions, to his own use, besides the rent of his office, from and out of the moneys so collected and received for postages; and they also averred that the principal defendant was never lawfully removed from his office, and that the moneys not paid over, as set forth in the declaration, were properly retained by him for rent of his office and as commissions for postages, from the first day of April, 1862, to the thirtieth day of September in the following year. Replication of the plaintiffs alleged that the office was discontinued by the Postmaster-G-eneral as unnecessary, on the thirteenth day of March, 1862; that the incumbent of the office was duly notified of that fact; that proper directions were given that the public property, keys, and hooks of the office should be transmitted to the Post-office Department; that letters and all other mailable matter then ceased to be delivered through or by that post-office, and that the defendant thereafter never collected any postages or rendered any quarterly accounts.
 

 Rejoinder of the defendants denied that the office was ever lawfully discontinued, and averred that letters and other mailable matter addressed to the office, and which, but for the unlawful discontinuance of the same, would have passed through it, were received and delivered by the postmaster at Philadelphia, sufficient in number and quantity to justify the annual allowance to the defendant as commissions, of two thousand dollars, and that the commissions so wrongfully withheld from the defendant exceeded in amount the alleged
 
 *627
 
 "balance due to the plaintiffs, and tendered an issue to the country. Plaintiffs demurred to the rejoinder of the defendants, and the defendants joined in demurrer. Parties were heard, and the court rendered judgment for the plaintiffs for the damages as found by the jury. All of the foregoing proceedings took place in the District Court; but the judgment was affirmed, on writ of error, in the Circuit Court, and the defendants removed the cause into this court.
 

 I. Theory of the defendants is, that the discontinuance of the post-office, even if it was the exercise of a lawful authority, did not carry with it the removal of the postmaster; and inasmuch as he was never removed by the President, they contend that he continued to be the postmaster
 
 de jure
 
 at that office, and that as such he was entitled to the commissions which the office would have earned if it had been regularly supplied with the mails as theretofore, and the defendant had performed all the duties which were devolved upon him prior to its discontinuance. Suppose all that could he admitted, still it is obvious that it would not, without more, establish a valid defence to the action, as it would yet be incumbent upon the defendant to show that he had a right to retain the amount which came to his hands before the office was discontinued, and tc set off against that sum the damages he sustained by the subsequent refusal of the Postmaster-G-eneral to allow him a credit equal to the commissions for the year and a half next following the time when the order of discontinuance was carried into effect.
 

 Demand of the plaintiffs is for damages -for not paying over moneys which came to the hands of the incumbent of the office during the six months next preceding its discontinuance, and they insist that he had no right to retain the amount so received for any purpose, but was bound by law to pay it over under the regulations of the department. On the other hand, the defendants insist, in argumoht, that he properly retained it, and might lawfully and as matter of right prove his supposed claim for commissions in set-off as an answer to the action of the plaintiffs. Nothing of the
 
 *628
 
 kind was alleged in the rejoinder, and nothing of the kind, therefore, was admitted by the demurrer. All that the rejoinder alleged was, that the commissions of the office, if it had not been unlawfully discontinued, would have been sufficient to justify an allowance to the incumbent of two thousand dollars per annum, and that the commissions were wrongfully withheld from him by the department.
 

 Taken separately from the other averments of the rejoinder, those allegations might afford some countenance to the proposition that the demurrer admitted away the plaintiffs’ case; but the whole must be considered together, and when so considered, it is evident that the pleader, when he alleged that the commissions were wrongfully withheld from the incumbent of the office, meant nothing more than that' he was wrongfully prevented from earning commissions, as the clear and indisputable inference from the introductory allegations of the rejoinder are that the office was never supplied with the- mails after it was discontinued.
 

 II. Commissions are allowed to deputy postmasters, at prescribed rates, on the postage collected at their respective offices in each quarter of the year, or in due proportion for any period less than a quarter, and they are required by law and the regulations of the department to render accounts quarter-yearly of the receipts and expenditures of their offices, which are expected to show the extent of their liability and the amount of the commissions to which they are entitled.
 
 *
 
 Viewed in the light of these suggestions, it is undeniable that the real claim of the principal defendant, as exhibited in the pleadings, was not for commissions in the sense in which that word is employed in the acts of Congress and the regulations of the department, but was, in truth and fact, a claim for damages, based on the assumption that he had been wrongfully prevented from earning such commissions by the neglect and refusal of the Postmaster-General to supply his office with the’ mails, and by its unlawful discontinuance. Assuming such to be the char-
 
 *629
 
 aeter of the claim as described in the rejoinder, then it follows, as a necessary consequence, that there are at least two difficulties in the way of the theory of the defendants which cannot be overcome.
 

 1. Where a deputy postmaster collects no postages, there can be no commissions allowed under the acts of Congress in force during the period embraced in this controversy, and as the office was not supplied with the mails there could be no receipts from boxes, as there were no letters or other mail matter to be delivered. Postage commissions, as ascertained by the quarterly accounts of deputy postmasters and the receipts from boxes, during that period, were the ouly sources of compensation to those officers allowed by law, and those sources having entirely failed in this case — yielding nothing —the department possessed no authority whatever to make any other allowance.
 
 *
 

 2. Claim of the principal defendant being for damages, and not for commissions or receipts from boxes, as ascertained in his quarterly accounts, the court below, if the case had been tried on the merits, could not have sustained the claim as a credit unless it had appeared affirmatively that it had been presented to the Auditor of the Post-office Department, and had been by him disallowed in whole or in part, or that he had been prevented from so presenting it by some unavoidable accident. Such has been the rule in respect to credits claimed by individuals at the Treasury Department, almost from the foundation of the government, and the original provision upon that subject is still in full foree.
 
 †
 

 Same rule, substantially, has been prescribed by Congress in the trial of suits against delinquent postmasters and mail contractors, except that the party claiming the credit is required to present the claim to the Auditor of the Post-office Department, bio claim not having been so presented and disallowed in whole or in part can be sustained at the trial, unless it appear that the defendant is then in possession of
 
 *630
 
 vouchers, not before in his power to procure, and that he was prevented from presenting the claim for credit to the auditor by some unavoidable accident.
 
 *
 

 Testing the rejoinder by these requirements it is too plain for argument that it is defective in substance, as the facts shown in the allegations are in several respects insufficient to constitute a defence to any part of the plaintiff’s claim. Plain inference from the facts, as alleged in the rejoinder, is that the defendant had neither collected any postages nor earned anything as receipts from boxes, and there is no pre-tence, even in argument, that he ever, during the period embraced in this controversy, rendered any quarterly account. Neglecting to allege those facts, or any of them, he utterly fails to show any claim to commissions, and having omitted to allege that his claim for credit on account of damages sustained was ever presented to the auditor and disallowed, he fails to make a case in which any such credit can be sustained in a Federal court.
 

 III. But suppose it were otherwise, still we are of the opinion that the plaintiffs must prevail, because, in our judgment, the post-office at Kensington was lawfully discontinued. A general post-office was established on the twenty-sixth day of July, 1775, the year before the Declaration of Independence.
 
 †
 
 By that ordinance it was directed that a line of posts bo appointed under the direction of the Postmaster-General, from Falmouth, now Portland, to Savannah, with as many cross-posts as he shall think fit; and he was authorized to appoint as many deputies as to him might seem proper and necessai’y. Amendments were made to that ordinance from time to time to the twenty-eighth day of October, 1782, when it was repealed, and a supplemental ordinance was adopted in its place, conferring substantially the same powers upon the Postmaster-General. Those powers were continued, with certain alterations and additions, until the Constitution of the United States was
 
 *631
 
 adopted. Congress, on the twenty-second day of September, 1789, made provision for the appointment of a Postmaster-General, and enacted that his powers and salary, and the compensation.to the assistant or clerk and deputies which he may appoint, and the regulations of the post-office, shall be the same as they last were under the regulations and ordinances of the late Congress.
 
 *
 

 Throughout that period post routes were established by Congress, but the deputy postmasters were invariably appointed by the Postmaster-General, and they were required to receive and distribute the mails at the places designated by the appointing power. "When the last-named act was passed it was entitled “An act for the temporary establishment of the post-officehut it was continued in force, from time to time, without any material alteration, until the twentieth day of February, 1792, when the act was passed to establish the post-office and post-roads within the United States.
 
 †
 
 Authority was conferred upon the Postmaster-General, by the third section of that act, “ to appoint an assistant and deputy postmasters where such shall be found necessary.”
 
 ‡
 
 Same authority was continued in the same terms in the act of the eighth of May, 1794, with the further provision that where there was more than one road between the places mentioned in the act, he might direct the route to be considered the post-road.
 
 §
 
 Express authority was conferred upon the Postmaster-General, by the act of the second of March, 1799,
 
 to establish joost-offiees
 
 and appoint postmasters at all such places on the post-roads that are or may be established by law, as shall appear to him expedient.
 
 ǁ
 
 Like power was conferred upon that officer by the first section of the act of the thirtieth of April, 1810, which also enacted that he should provide for the carrying of the mail on all post-roads that are or may be established by law, and as often as he, having regard to the productiveness thereof, and other circumstances, shall think proper.
 
 ¶
 

 
 *632
 
 Power to establish post-offices and,post-roads is conferred upon Congress, but the policy of the government from the time the General Post-office was established, has been to delegate the power to designate the places where the mails shall be received and delivered to the Postmaster-General. Sufficient evidence of that fact is seen in the references already made to acts of Congress; but if more be needed it will be found in the first section of the act of the third of March, 1825, entitled “An act to reduce into one the several acts establishing and regulating the Post-office Department.”
 
 *
 
 Provision is there made that the Postmaster-General “ shall establish post-offices and appoint postmasters at all such places as shall appear to him expedient, on the post-roads that are or may be established by law.” Do part of that provision has been repealed except the clause as to the appointment of postmasters for offices where the commissions amount to-or exceed one thousand dollars. Such appointments must be made by the President, by and with the advice and consent of the Senate; but in all other cases the power of appointing postmasters is still vested in the Postmaster-General, and his power
 
 to establish ■post-offices,
 
 as there conferred, is neither repealed nor modified. We concur with the plaintiffs, that the power to discontinue post-offices is incident to the power to establish them, unless there is some provision in the acts of Congress restraining its exercise.
 
 †
 

 Undoubtedly Congress might discontinue a post-office which they had previously established by law, and it is difficult to see why the Postmaster-General may not do the same thing when acting under an act of Congress expressed in the very words of the Constitution from which Congress derives its power. Strong necessity exists that the power of the Postmaster-General in this behalf should be upheld so long as the offices are established by his authority. Dew facilities for transportation may call for change of location, or it may appear that the location was unadvisedly selected,
 
 *633
 
 either from want of proper information or through misrepresentation. Some of these causes must be constantly operating in a sphere of action so vast and diversified as that of the Post-office establishment. Probably it was such reasons and others of a like character that gave rise to the practice which is believed to have been coeval with the creation of the department. Such a practice, which it is understood has been in constant exercise for more than three-fourths of a century, is certainly entitled to weight in the construction of an act of Congress appertaining to tlie powers of a department of the government. Much support to that view of the subject is also derived from the acts of Congress recognizing the power as one subsisting in the Postmaster-General. Section eleven of the act of the second of July, 1836, requires the Postmaster-General to cause to be certified to the auditor of the department “ all establishments and
 
 discontinuances of post-offices,
 
 and all appointments, deaths, resignations, and removals of postmasters,” and tlie second section of the act of the third of March, 1851, provides that no post-office now in existence shall be discontinued .... in consequence of any diminution of the revenues that may result from that act.
 
 *
 
 'When weighed in connection with the immemorial usages of the department, those acts of Congress recognizing the existence of the power, may well be regarded as a legislative interpretation of the provision authorizing the Postmaster-General to establish post-offices, and as sanctioning a construction in conformity to that well-known usage.
 

 Possessing that power it was lawful for the Postmaster-General to exercise it, notwithstanding the postmaster had been appointed by the President, by and with the advice and consent of the Senate, because the incumbent accepted the appointment subject to the legal contingency that the post-office might be discontinued. Congress, therefore, by necessary implication, authorized the Postmaster-General to discontinue any such post-office whenever it should appear
 
 *634
 
 to him to bo expedient and proper, and having exercised that discretion it is not possible to hold that the discontinuance was unlawful.
 

 Learned counsel will hardly contend that Congress might not have discontinued that office, and our conclusion is that the same effects flow from the discontinuance in this case as if it had been directly declared by an act of Congress.
 

 Defendant, wffien the post-office was discontinued, ceased to be postmaster at Kensington, because there was no longer any post-office at that place. He was never entitled to any compensation except commissions and receipts from boxes, and those sources of compensation were extinguished when the post-office was discontinued, and he lost nothing to which he was entitled.
 

 The judgment of the Circuit Court is therefore
 

 AFFIRMED.
 

 *
 

 5 Stat. at Large, 84.
 

 *
 

 4 Stat. at Large, 102, 105; 10 Id. 298.
 

 *
 

 9 Stat. at Large, 202; 10 Id. 298.
 

 †
 

 1 Id. 515; United States
 
 v.
 
 Giles, 9 Cranch, 212.
 

 *
 

 5 Stat. at Large, 83.
 

 †
 

 1 Laws of the United States, ed. 1815, p. 649.
 

 *
 

 1 Stat. at Large, 70.
 

 §
 

 1 Id. 357.
 

 †
 

 1 Id. 178-218.
 

 ǁ
 

 Id. 733.
 

 ‡
 

 Id. 234.
 

 ¶
 

 2 Id. 593.
 

 *
 

 4 Stat, at Large, 102.
 

 †
 

 Ex parte Hennen, 12 Peters, 261.
 

 *
 

 5 Stat. at Large, 82; 9 Id. 590.