# CHASE *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 83. Argued November 19, 1894. — Decided December 10, 1894.

Judgments in a District or Circuit Court of the United States in cases brought under the act of March 3, 1887, c. 359, 24 Stat. 505, are not required to be brought here for revision by appeal only, but may be brought by writ of error; but they will be reëxamined here only when the record contains a specific finding of facts with the conclusions of law thereon.

On the 1st day of May, 1870, the Postmaster General had no authority to contract in writing for the lease of accommodations for a local post office in a building for a term of twenty years.

THIS writ of error brought up a judgment of the Circuit Court of the United States for the District of Indiana, dis-

missing a suit instituted against the United States by the personal representatives of Hiram W. Chase.

It appears from the statement of facts made by the court below that on the 17th day of July, 1866, John K. Snider leased for a term of ten years a certain lot with the building thereon in Lafayette, Indiana, to be occupied by the United States as a post office; that the building was so occupied until December, 1869, when it was destroyed by fire; that James Montgomery, previous to the fire, became the owner of the property, and entitled to the benefit of the lease; that on the 1st day of May, 1870, Montgomery made a lease, in form to the United States represented by the Postmaster General, for the term of twenty years and at an annual rental of $1500, payable in equal quarterly instalments, of certain parts of a building which he covenanted to erect upon the same lot. He also covenanted to supply and keep in repair to the satisfaction of the Postmaster General all boxes and fixtures necessary for a post office in that building.

Montgomery erected the required building and the United States took possession of it. On the 15th day of April, 1870, he assigned his interest in the lease to one Tuttle, who, on the 10th of February, 1871, assigned to Chase, the testator of the plaintiff. Subsequently, May 10, 1886, the government, without complaining of any violation of the terms of the lease, vacated the premises and refused to pay rent thereafter.

During the occupancy of the premises Chase laid out and pended for furniture, fixtures, and required changes the sum of $2000, and, at the time the premises were vacated, he was engaged in conformity with the request of the postal officers in making other repairs and additions.

The present action was brought on the lease to recover the amount due for the unexpired term.

The Circuit Court adjudged that the Postmaster General had no authority to execute the lease, and that the government was not liable to suit upon it. For that reason the suit was dismissed. 44 Fed. Rep. 732.

That judgment being brought here by writ of error, a motion was made to dismiss the writ, on the ground that there

was no jurisdiction in this court by writ of error to review the judgment complained of. The hearing of this motion was postponed to the hearing on the merits.

*Mr. John C. Chaney,* for plaintiff in error, (*Mr. Addison C. Harris* filed the brief for same,) said, on the merits:

The Postmaster General had, by virtue of his power "to establish post offices," full power to rent, or lease, in short all the power of Congress which had not been taken from him by some negative act of Congress; and the power to lease, while it has been treated as a power "necessarily implied" from the power "to establish," is something more. It is more correct to call it an "included" power than an "implied" power; but whatever be its correct name, it was a power which reposed in the Postmaster General's hands at the time he made the lease sued on; so it was "authorized by law" within section 3732 of the Revised Statutes. *Ware* v. *United States*, 4 Wall. 617.

When it is admitted that the Postmaster General has power to make a lease, it follows that, in the absence of a statute limiting the length of time leases may run, he has plenary power (unless acting in bad faith) to make leases; for, if a court should assume to inquire into the necessity of the lease, *i.e.* whether a lease of one, two, five or twenty years was longer than necessary to the proper conduct of the post office in a given place, that would be *ipso facto* to deny the power, and moreover it would seem impossible to find any basis for the decision of such a question. See *McCulloch* v. *Maryland*, 4 Wheat. 316, 423; *Jacksonville, Pensacola &c. Railroad* v. *United States*, 118 U. S. 626; *Garfielde* v. *United States*, 93 U. S. 246; *Ex parte Jackson*, 96 U. S. 727, 732; *Ware* v. *United States, supra.*

*Mr. Assistant Attorney General Dodge,* (with whom was *Mr. Solicitor General* on the brief on the motion to dismiss, and *Mr. Assistant Attorney General Conrad* on the brief on the merits,) said, on the motion to dismiss:

This case, coming to the court as it does by writ of error, presents the opportunity for an authoritative construction of the appellate provisions of the act of March 3, 1887, c. 359, 24 Stat. 505, commonly known as the Tucker Act, and for the decision of the question whether the judgments of Circuit and District Courts under that peculiar jurisdiction should be brought up for review by appeal or by writ of error.

This question has grown greatly in importance since the interposition of the Circuit Courts of Appeal as reviewing tribunals. Owing to unfamiliarity of many District Attorneys and Federal judges with the Court of Claims practice, and the inaccessibility of reports of the decisions of that court, the methods adopted in bringing up judgments and records for review and the rulings of the courts thereon vary widely and are extremely confusing. In many cases the right of litigants to review such judgments is jeopardized, and, indeed, entirely defeated.

In one Circuit Court of Appeals, appeals are dismissed because no bill of exceptions is settled bringing into the record the various objections and exceptions saved in the course of the trial. In others, both attorneys and court apparently deem it essential that the evidence taken on the trial be embodied in the record. In very many the importance and significance of the findings of fact and conclusions of law are wholly lost sight of by reason of misapprehension as to the proper method of review. In others, appeal is held to be proper. *United States* v. *Fletcher*, 60 Fed. Rep. 53; *United States* v. *Yukers*, 60 Fed. Rep. 641.

The existing statutes for the review of judgments of the Court of Claims reached their present form in the Revised Statutes in 1874, in §§ 707, 708, by the latter of which authority was expressly conferred on the Supreme Court to regulate the method of allowing appeals. By virtue of these statutes certain rules prescribed by the Supreme Court have been incorporated into and have undoubtedly become a part of the law regulating the appeals; among others Rule I, limiting the review to the purely legal question, *what judgment properly results from the facts found by the trial court*, thereby elimi-

nating many of the questions usually presented on appeals, but more especially eliminating those matters which are presented by writs of error, and require exceptions to be taken in the trial court and bills of exceptions to be settled to bring them into the record, such as error in the admission or rejection of evidence, or in making findings of fact unsupported by evidence or contrary to the undisputed evidence. The single question so to be considered requires no variation in the method of bringing it up, and therefore an *appeal* only is provided and no writ of error authorized. *United States* v. *Young*, 94 U. S. 258, 259.

Under this jurisdiction grew up a well-recognized class of cases known as claims against the United States, distinguished from all other litigations by the character of the defendant, and unaffected by the nature of the transactions out of which they sprang or by considerations as to whether they would have been legal or equitable in their character if between individuals.

When in 1887, by the Tucker Act, *concurrent* jurisdiction over this same class of cases was conferred on Circuit and District Courts, no change took place in the distinctiveness of the class; they remained cases of claims against the United States as before. The statute, § 9, gave to the parties "the same rights of appeal or writ of error as are now reserved in the statutes of the United States in that behalf made. . . . The modes of procedure in claiming and perfecting an appeal or writ of error shall conform in all respects as near as may be to the statutes and rules of court governing appeals and writs of error in like causes."

This court has had occasion to pass upon this portion of the statute but once, viz., in *United States* v. *Davis*, 131 U. S. 36. That was an *appeal* from a judgment in an action of legal, as distinguished from equitable, character, rendered by the District Court of the District of Maryland. This court held that the rights of appeal and writ of error reserved by the Tucker Act were the same as formerly existed from the Court of Claims, and that the words in that act "reserved in the statutes of the United States in that behalf made" meant

reserved with reference to judgments in cases of claims against the United States in the Court of Claims.

The statute has received further construction at the hands of Mr. Justice Lamar, sitting at circuit in *Strong* v. *United States*, 40 Fed. Rep. 183, So. Dist. Alabama. The logic of the Davis case is there slightly amplified, and it is held that the right to the review of judgments in claims cases in Circuit and District Courts is controlled by the statutes regulating reviews of judgments of the Court of Claims; in other words, sections 707 and 708, Revised Statutes, are held to be, by the section above quoted, embodied in the Tucker Act, and therefore to constitute and limit the full measure of review to which either party is entitled.

This principle applied to the present case is conclusive of the motion to dismiss the writ. Writ of error is not and never was authorized to review judgments of the Court of Claims, and therefore is not available to bring up for review judgments of the Circuit and District Courts rendered in their concurrent jurisdiction over claims cases.

Another consideration exists in the long and well-established practice of this court under the Tucker Act to take jurisdiction by appeal from judgments which in case of individual litigants would be reviewable only on writ of error. We cite below all the reviews of judgments of Circuit or District Courts in claims cases upon which this court has passed otherwise than to dismiss either on stipulation or on motion of the appellant or plaintiff in error. They are all *appeals*, and all except thrèe are actions at *law* as distinguished from suits in equity. So far as we have been able to discover, no case other than the one at bar has been brought to this court by writ of error, except that of *Richard S. Tuthill*, which was dismissed in April, 1890, on motion of the government, plaintiff in error, for what reason we have been unable to ascertain. *United States* v. *Davis* (Maryland), 131 U. S. 36. Motion to dismiss overruled; *United States* v. *Barber* (Mid. Alabama), 140 U. S. 164, affirmed; *United States* v. *Tuthill* (Nor. Illinois). Writ of error dismissed April, 1890, on motion of the plaintiffs in error, 136 U. S. 652; *United States* v. *Jones* (Oregon), 131

U. S. 1, reversed; *United States* v. *Taubenheimer* (Oregon),
131 U. S. 1, reversed; *United States* v. *Montgomery* (Oregon),
131 U. S. 1, reversed; *United States* v. *Barber* (Mid. Ala-
bama), 140 U. S. 177, reversed; *United States* v. *Poinier*
(South Carolina), 140 U. S. 160, reversed; *United States* v.
*McDermott* (Kentucky), 140 U. S. 151, reversed; *United
States* v. *Jones* (So. Alabama), 147 U. S. 672, reversed; *United
States* v. *Fletcher* (E. Arkansas), 147 U. S. 664, reversed;
*United States* v. *Faulkner* (Mid. Tennessee), 145 U. S. 658,
reversed on stipulation; *United States* v. *Van Duzee* (Nor.
Iowa), 140 U. S. 169, reversed; *United States* v. *Julian* (Mid.
Tennessee), 145 U. S. 659, reversed on stipulation; *United
States* v. *Taylor* (E. Tennessee), 147 U. S. 695, reversed;
*United States* v. *Harmon* (Maine), 147 U. S. 268, affirmed;
*United States* v. *Carter* (E. Tennessee), 140 U. S. 702, reversed
on stipulation; *United States* v. *Clough* (W. Tennessee), 145
U. S. 658, dismissed on the government's motion; *United
States* v. *Ewing* (E. Tennessee), 140 U. S. 142, reversed;
*United States* v. *Hall* (N. Ohio), 147 U. S. 691, reversed;
*United States* v. *Pitman* (Rhode Island), 147 U. S. 669, af-
firmed; *United States* v. *Fitch* (W. Michigan), 145 U. S. 658,
dismissed on government's motion; *United States* v. *Bashaw*
(E. Missouri), 152 U. S. 436, reversed.

Mr. Justice Harlan, after stating the case, delivered the
opinion of the court.

The first question to be considered involves the jurisdiction
of this court to review the judgment below upon writ of error.
The United States contend that a judgment rendered in a
suit brought under the act of March 3, 1887, c. 359, entitled
" An act to provide for the bringing of suits against the gov-
ernment of the United States," and commonly known as the
Tucker Act, cannot be reëxamined here except upon appeal.
24 Stat. 505. So much of that act as can have any bearing
upon this case is printed in the margin.[1]

---

[1] Sec. 1. That the Court of Claims shall have jurisdiction to hear and
determine the following matters:

The contention of the government as to the jurisdiction of this court is not well founded. Congress did not intend that

---

First. All claims founded upon the Constitution of the United States, or any law of Congress, except for pensions, or upon any regulation of an Executive Department, or upon any contract expressed or implied, with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable: *Provided,* *however,* That nothing in this section shall be construed as giving to either of the courts herein mentioned jurisdiction to hear and determine claims growing out of the late civil war, and commonly known as "war claims," or to hear and determine other claims, which have heretofore been rejected, or reported on adversely by any court, department, or commission authorized to hear and determine the same.

Second. All set-offs, counter-claims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the government of the United States against any claimant against the government in said court: *Provided,* That no suit against the government of the United States shall be allowed under this act unless the same shall have been brought within six years after the right accrued for which the claim is made.

SEC. 2. That the District Courts of the United States shall have concurrent jurisdiction with the Court of Claims as to all matters named in the preceding section where the amount of the claim does not exceed one thousand dollars, and the Circuit Courts of the United States shall have such concurrent jurisdiction in all cases where the amount of such claim exceeds one thousand dollars and does not exceed ten thousand dollars. All causes brought and tried under the provisions of this act shall be tried by the court without a jury.

SEC. 3. That whenever any person shall present his petition to the Court of Claims alleging that he is or has been indebted to the United States as an officer or agent thereof, or by virtue of any contract therewith, or that he is the guarantor, or surety, or personal representative of any officer, or agent, or contractor so indebted, or that he, or the person for whom he is such surety, guarantor, or personal representative has held any office or agency under the United States, or entered into any contract therewith, under which it may be or has been claimed that an indebtedness to the United States has arisen and exists, and that he or the person he represents has applied to the proper Department of the Government requesting that the account of such office, agency, or indebtedness may be adjusted and settled, and that three years have elapsed from the date of such application and said account still remains unsettled and unadjusted, and that no suit upon the same has been brought by the United States, said court shall, due notice first being given to the head of said Department and to the Attorney

cases brought under this act in a District or Circuit Court of the United States, should be brought here by appeal only.

---

General of the United States, proceed to hear the parties and to ascertain the amount, if any, due the United States on said account. The Attorney General shall represent the United States at the hearing of said cause. The court may postpone the same from time to time whenever justice shall require. The judgment of said court or of the Supreme Court of the United States, to which an appeal shall lie, as in other cases, as to the amount due, shall be binding and conclusive upon the parties. The payment of such amount so found due by the court shall discharge such obligation. An action shall accrue to the United States against such principal, or surety, or representative to recover the amount so found due, which may be brought at any time within three years after the final judgment of said court. Unless suit shall be brought within said time, such claim and the claim on the original indebtedness shall be forever barred.

SEC. 4. That the jurisdiction of the respective courts of the United States proceeding under this act, including the right of exception and appeal, shall be governed by the law now in force, in so far as the same is applicable and not inconsistent with the provisions of this act; and the course of procedure shall be in accordance with the established rules of said respective courts, and of such additions and modifications thereof as said courts may adopt.

SEC. 5. That the plaintiff in any suit brought under the provisions of the second section of this act shall file a petition, duly verified with the clerk of the respective court having jurisdiction of the case, and in the district where the plaintiff resides. Such petition shall set forth the full name and residence of the plaintiff, the nature of his claim, and a succinct statement of the facts upon which the claim is based, the money or any other thing claimed, or the damages sought to be recovered and praying the court for a judgment or decree upon the facts and law.

SEC. 6. That the plaintiff shall cause a copy of his petition filed under the preceding section to be served upon the District Attorney of the United States in the district wherein suit is brought, and shall mail a copy of the same, by registered letter, to the Attorney General of the United States, and shall thereupon cause to be filed with the clerk of the court wherein suit is instituted an affidavit of such service and the mailing of such letter. It shall be the duty of the District Attorney upon whom service of petition is made as aforesaid to appear and defend the interests of the Government in the suit, and within sixty days after the service of petition upon him, unless the time should be extended by order of the court made in the case to file a plea, answer, or demurrer on the part of the Government, and to file a notice of any counter-claim, set-off, claim for damages, or other demand or defence whatsoever of the Government in the premises: *Provided,* That should the District Attorney neglect or refuse to file the plea, answer, demurrer, or defence, as required, the plaintiff may proceed with the case

Throughout all the provisions relating to actions commenced in those courts there is shown a purpose to preserve the dis-

under such rules as the court may adopt in the premises; but the plaintiff shall not have judgment or decree for his claim, or any part thereof, unless he shall establish the same by proof satisfactory to the court.

· SEC. 7. That it shall be the duty of the court to cause a written opinion to be filed, in the cause, setting forth the specific findings by the court of the facts therein and the conclusions of the court upon all questions of law involved in the case, and to render judgment thereon. If the suit be in equity or admiralty, the court shall proceed with the same according to the rules of such courts.

SEC. 8. That in the trial of any suit brought under any of the provisions of this act, no person shall be excluded as a witness because he is a party to or interested in said suit; and any plaintiff or party in interest may be examined as a witness on the part of the Government.

Section ten hundred and seventy-nine of the Revised Statutes is hereby repealed. The provisions of section ten hundred and eighty of the Revised Statutes shall apply to cases under this act.

SEC. 9. That the plaintiff or the United States, in any suit brought under the provisions of this act, shall have the same rights of appeal or writ of error as are now reserved in the statutes of the United States in that behalf made, and upon the conditions and limitations therein contained. The modes of procedure in claiming and perfecting an appeal or writ of error shall conform in all respects, and as. near as may be, to the statutes and rules of court governing appeals and writs of error in like causes.

· SEC. 10. That when the findings of fact and the law applicable thereto have been filed in any case as provided in section six of this act, and the judgment or decree is adverse to the Government, it shall be the duty of the District Attorney to transmit to the Attorney General of the United States certified copies of all the papers filed in the cause, with a transcript of the testimony taken, the written findings of the court, and his written opinion as to the same; whereupon the Attorney General shall determine and direct whether an appeal or writ of error shall be taken or not; and when so directed the District Attorney shall cause an appeal or writ of error to be perfected in accordance with the terms of the statutes and rules of practice governing the same; *Provided,* That no appeal or writ of error shall be allowed after six months from the judgment or decree in such suit. From the date of such final judgment or decree interest shall be computed thereon, at the rate of four per centum per annum, until the time when an appropriation is made for the payment of the judgment or decree.

SEC. 11. That the Attorney General shall report to Congress, and at the beginning of each session of Congress, the suits under this act in which a final judgment or decree has been rendered, giving the date of each, and a statement of the costs taxed in each case.

SEC. 16. That all laws and parts of laws inconsistent with this act are hereby repealed.

tinction between cases at law, cases in equity, and cases in admiralty. The phrases "judgment or decree," "right of exception or appeal," "equity or admiralty," "rights of appeal or writs of error," and "appeal or writ of error," taken in connection with the clause in the fourth section relating to the jurisdiction of the respective courts of the United States proceeding under the act and providing that "the course of procedure shall be in accordance with the established rules of said respective courts, and of such additions and modifications thereof as said courts may adopt;" with that part of section seven which in terms refers to the distinction between cases at law and cases in equity and admiralty, and directs that "if the suit be in equity or admiralty the court shall proceed with the same according to the rules of such courts;" with the express recognition in section nine, of the "same rights of appeal or writs of error" in any suit brought under this act as were reserved in the statutes of the United States in that behalf at the date of the passage of the act; with the requirement, in the same section, that "the modes of procedure in claiming and perfecting an appeal or writ of error shall conform in all respects, and as near as may be, to the statutes and rules of court governing appeals and writs of error in like causes;" and with the provision in section ten, making it the duty of the District Attorney, when the Attorney General shall determine "whether an appeal or writ of error shall be taken or not" in cases in which "the judgment or decree" shall be adverse to the government, to cause "an appeal or writ of error to be perfected in accordance with the terms of the statutes and rules of practice governing the same;" these phrases, clauses, and provisions make it, we think, reasonably clear that Congress intended that the final determination of suits brought under this act in a District or Circuit Court of the United States shall be reviewed here upon writ of error, if the case be one at law, and upon appeal, if the case is one cognizable in equity or in admiralty under the existing statutes regulating the jurisdiction of those courts.

But Congress, while recognizing the settled distinction between law, equity, and admiralty, did not intend that the

records of cases brought against the government under this act should contain all that is required in suits instituted in the courts of the United States under the general statutes regulating their jurisdiction and the modes of procedure therein. Neither the mode of procedure in the Court of Claims, nor the mode in which cases there determined may be brought here for reëxamination, were changed by the act of March 3, 1887. But under that act, a judgment of a District or Circuit Court of the United States in an action at law brought against the government, will be reëxamined here only when the record contains a specific finding of facts with the conclusions of law thereon. In such cases, this court will only inquire whether the judgment below is supported by the facts thus found. And, we think, it was also the purpose of Congress to require like specific findings or statements of fact and conclusions of law in cases in equity and in admiralty brought under that act in the District and Circuit Courts of the United States, and to restrict our inquiry in such cases, as in actions at law, to the sufficiency of the facts so found or stated to support the final judgment.

For the reasons stated the motion to dismiss the writ of error for want of jurisdiction in this court to review, in that mode, the final judgment of the court below is overruled.

Was the United States liable upon the written contract of lease which is the foundation of this action?

By the law in force when the lease sued on was executed, it was made the duty of the Postmaster General " to establish post offices." By section 3732 of the Revised Statutes it is provided, as did, substantially, the statutes in force when the lease was made, that " no contract or purchase on behalf of the United States shall be made unless the same is authorized by law, or is under an appropriation adequate to its fulfilment, except in the War and Navy Departments, for clothing, subsistence, forage, fuel, quarters, or transportation, which, however, shall not exceed the necessities of the current year." Act of March 3, 1825, c. 64, § 1, 4 Stat. 102; Act of March 2, 1861, c. 84, § 10, 12 Stat. 220.

Much stress is placed by counsel for the plaintiff upon the

clause making it the duty of the Postmaster General to establish post offices; the contention being that the power to establish a post office carries with it authority to lease rooms or a building in which the postmaster may conduct the business of his office. In support of this position *Ware v. United States*, 4 Wall. 617, is cited. But that case does not justify any such interpretation of the act of Congress. The question there was as to the power of the Postmaster General to discontinue a post office that had once been established by him under the authority conferred by the act of 1825, 4 Stat. 102, "to establish post offices." This court, observing that the power to discontinue post offices is incident to the power to establish them, unless there was some provision in the acts of Congress restraining its exercise, said: " Undoubtedly, Congress might discontinue a post office which they had previously established by law, and it is difficult to see why the Postmaster General may not do the same thing when acting under an act of Congress, expressed in the very words of the Constitution from which Congress derives its power." Again: " Power to establish post offices and post roads is conferred upon Congress, but the policy of the government from the time the general post office was established has been to delegate the power to designate the places where the mail shall be received and delivered to the Postmaster General." p. 632.

There was no issue in that case as to the extent of the authority of the Postmaster General to bind the government by contract for the payment of money or for the lease of a building for a post office. That case did not call for any consideration of the general question, whether the words in the statute, "to establish post offices," had the full meaning of the same words found in the section of the Constitution enumerating the powers of Congress.

Nor is it necessary to determine all that may be done by the Postmaster General under the power "to establish post offices" conferred upon that officer; for those words are to be interpreted in connection with the above statutory provision forbidding the making, except in the War and Navy Departments, and in those departments only for certain

things and under specified conditions, of any contract or purchase on behalf of the United States unless the same be authorized by law, or is under an appropriation adequate to its fulfilment. There is no claim that the lease in question was made under any appropriation whatever, much less one adequate to its fulfilment. So that the only inquiry is, whether the contract of lease was "authorized by law" within the meaning of the statute relating to contracts or purchases on behalf of the government.

The counsel of the plaintiff contends that a contract of lease on behalf of the United States is authorized by law if made by the Postmaster General for the purpose of procuring rooms or a building for a post office established by him. The same argument would sustain a purchase by the Postmaster General, on behalf of the United States, of a building to be used for a post office so established by that officer. We cannot give our sanction to this interpretation of the statute. It would give the Postmaster General much larger powers than we believe Congress intended to give him. While the Postmaster General, under the power to establish post offices, may designate the places, that is, the localities, at which the mails are to be received, he cannot bind the United States by any lease or purchase of a building to be used for the purposes of a post office, unless the power to do so is derived from a statute which either expressly or by necessary implication authorizes him to make such lease or purchase. The general authority "to establish post offices" does not itself, or without more, necessarily imply authority to bind the United States by a contract to lease or purchase a post-office building, although an appropriation of money to pay for the rent of a post-office building at a named place might give authority to the Postmaster General to lease such building in that locality as he deemed proper for the service, always keeping within the amount so appropriated. So also the power to lease a building to be used as a post office may be implied from a general appropriation of money to pay for rent of post offices in any particular fiscal year or years.

We have considered the case in the light of the statutes in

force when the lease of May 1, 1870, was executed. Shortly after that date, by the act of July 12, 1870, c. 251, § 7, 16 Stat. 251, it was provided that no department of the government should expend, in any one year, any sum in excess of appropriations—made by Congress for that fiscal year, or involve the government in any contract for the future payment of money in excess of such appropriations. And that provision is reproduced in section 3679 of the Revised Statutes.

We are of opinion that the lease sued on was not authorized by law, and, consequently, no action can be maintained thereon.

The judgment is                                    *Affirmed.*