## UNITED STATES v. DOULLUT.

(Circuit Court of Appeals, Fifth Circuit. April 15, 1914.)

### No. 2495.

UNITED STATES (§ 60*) — EXECUTIVE DEPARTMENTS — POWER TO MAKE CONTRACTS.

Under the provisions of Rev. St. § 3732 (U. S. Comp. St. 1901, p. 2504), that "no contract or purchase on behalf of the United States shall be made unless the same is authorized by law or is under an appropriation adequate to its fulfillment," with certain exceptions as to the War and Navy Departments, and of section 3679 (U. S. Comp. St. 1901, p. 2454) that "no department of the government shall expend, in any one fiscal year any sum in excess of appropriations made by Congress for that fiscal year, or involve the government in any contract for the future payment of money in excess of such appropriations," in the absence of statutory authority the Secretary of the Treasury has no power to make for the United States a contract to lease for five years a building for the use of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

th&amp; customs service, and such a contract is not binding on the United States.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 43; Dec. Dig. § 60.*]

In Error to the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Action by Paul Doullut against the United States. Judgment for plaintiff, and defendant brings error. Reversed.

This suit was commenced under the provisions of Tucker Act March 3, 1887, c. 359, 24 Stat. L. 505 (U. S. Comp. St. 1901, p. 752), by filing the following petition on May 26, 1911:

"To the Honorable the Judges of the Circuit Court of the United States for the Eastern District of Louisiana.

"Paul Doullut, of New Orleans, a citizen of the state of Louisiana, brings this, his bill against the United States of America, and thereupon your plaintiff complains and says: That defendant herein, the United States of America, is justly indebted unto your petitioner in the full sum of $5,570 actual damages caused petitioner by the said defendant herein, and which said damages occurred, and the cause thereof, your petitioner specifically complains of, and recites as follows:

"Petitioner complains that on the 13th day of January, 1911, he proposed to the defendant herein to build at Quarantine, La., on the government reservation, a building under plans approved and made by Capt. H. G. Richey, superintendent of construction of United States public buildings, same to be completed and ready for occupancy six weeks after acceptance; that the defendant herein was to pay to petitioner a rental of $35 per month for five years, and at the expiration of said term, said defendant, the United States government, had the option to renew the said rental for a like term, or to purchase said building for $2,800, and all of which is fully set out in the exhibit marked 'P. A.' and made part of this, your petitioner's, bill of complaint.

"Your petitioner further complains and shows that, on the 18th day of February, 1911, the United States of America, through Henry McCall, collector of customs for the port of New Orleans, in this state of Louisiana, advised your complainant that the defendant would lease the building when completed at $25 per month instead of $35 as first proposed under and in Exhibit P. A., hereinabove set out, and attached as part of this bill of complainant's, and instructed your petitioner to proceed at once with the erection and construction of the said building, and your complainant attaches, and also makes part of this his bill, said acceptance and order to erect said building, and marks same as 'Exhibit P. B.' and avers that he accepted the said offer.

"And your petitioner further shows, avers, and says that after his acceptance of the proposal by the defendant herein on the said 18th day of February, 1911, he purchased the necessary material for the erection of said building at the Quarantine Station, and chartered a barge to convey the said material for the erection of said building, and loaded said barge with said material at the foot of Egania street in this city, ready to proceed to Quarantine, La., and erect the said building on the plot of ground to be designated by the defendant at Quarantine Station, La., in accordance therewith.

"Your petitioner further says and complains that on the 1st day of March, 1911, he visited with the surveyor of the port of New Orleans, the Quarantine Station, to learn and ascertain upon what particular spot of ground said building was to be erected, but was informed by Dr. Corput, surgeon in charge of said Quarantine Station in Louisiana, that said officer was without authority to designate any spot or place for the erection of said building for the use of defendant; that upon the 4th day of March, 1911, your petitioner called upon the defendant to designate the location for the building to be erected, and notified said defendant that he, petitioner, was under the expense of $10 per day for the rental of the barge to transport said material.

"Now your petitioner shows and avers that on the 21st day of April the

*For other cases see same topic &amp; § NUMBER in Dec. &amp; Am. Digs. 1907 to date, &amp; Rep'r Indexes

defendant, the United States government, through C. S. Hebert, collector of customs for the port of New Orleans; notified your petitioner that a new building would not be required at Quarantine Station, La., as agreed, and complainant says and avers that he had complied with every contractual obligation imposed upon him, under a contract had in good faith, and refused to permit the abrogation thereof, or relinquish his right in said agreement, and that the defendant, the United States government in equity cannot inflict loss upon an innocent party who enters into a contract with the government of the United States of its own seeking, making, and in which it prescribes the conditions, and which your complainant accepted in good faith, and thereof and therefore so informed them, insisting upon his right to carry out his contract in every detail.

"Now your petitioner says and complains that, relying upon defendant's agreement, he completed all arrangements and purchased all material to comply with the agreement had; the United States of America, through C. S. Hebert, collector of customs for the port of New Orleans, notified your petitioner and complainant herein on the 29th day of April, 1911, that said building your petitioner had bound himself to erect under Exhibit P. A. would not be required, and petitioner annexes as part of this his bill, said document, and marks same 'P. C.'

"Now, your petitioner says and specifically shows that he has suffered damages, and that said damages were caused by and through the acts and action of the defendant herein, and that the damages caused him by the defendant herein, and specifically hereinbelow set out, are as follows: First, the loss of rental of Barge he engaged to transport material for said building, to be erected by petitioner for defendant at and on Quarantine Station, La., the said rental being $10 per day, beginning on the 4th day of March, 1911, until the 19th day of May, 1911, being 77 days, at $10 per day and for which plaintiff is liable, $770; second, the loss of the rental of said building as agreed for a period of five years at $25 per month, 60 months, and which plaintiff has been deprived of by the acts of defendant, $1,500; third, the time and services of your petitioner given from February 18, 1911, to May 19, 1911, under said agreement, $500; fourth, the value of said building to be purchased by the defendant at the expiration of the term of five years $2,800—thus making a total amount due and equitably owing to petitioner of $5,570.

"And petitioner further shows and complains that all the material purchased by him for the erection of said building and loaded on said barge had been cut, all openings made and prepared, and the roof shingles cut of special size, under and in accordance with the plans and specifications furnished by the defendant herein and hereinabove referred to, and further complains that same is of no value to him, and he holds same at risk of defendant, and here tenders same to the defendant.

"Therefore, your petitioner prays that the defendant herein, the United States of America, may be decreed to pay unto your plaintiff, Paul Doullut, $5,570 for the causes hereinabove enumerated and specifically charged, and that your plaintiff may have such further or other relief in the premises as the nature of the circumstances of this case may require and that to your honors shall seem meet.

"And, may it please your honors, that the district attorney for the Eastern district of Louisiana, on being attended with a copy of this bill, may appear and put in his answer thereto, and may stand to and abide by such order, direction, and decree in the premises as to your honors shall seem meet, and your petitioner shall ever pray," etc.

On August 4, 1911, the United States filed the following demurrer: "Now into this court come the defendants herein by Charlton R. Beattie, United States attorney, who prosecutes in their behalf and by way of general demurrer say: That the bill herein filed by the plaintiff and the matters therein contained in the manner and form as therein alleged show no equity, and show no cause or right of action cognizable either in equity or at law, and are not sufficient in law to require the defendants to answer same, and this the

United States are ready to verify. Wherefore, for the reasons alleged, defendants pray for judgment dismissing the bill and for all general and equitable relief."

On August 23, 1911, by consent an order of court was entered permitting the plaintiff to erase the words "in equity" appearing on the petition, and ordering the case to be thereafter treated as an action at law without rewriting the petition or filing any additional pleadings or requiring other service. Thereafter, on February 23, 1912, the aforesaid demurrer was heard and submitted, and on February 27, 1912, the same was overruled, and thereupon the following answer was filed:

"United States District Court, Eastern District of Louisiana, New Orleans Division.
"Paul Doullut v. United States.
"No. 13,896.

"And now into this honorable court comes the defendants herein through Charlton R. Beattie, United States attorney, reserving all rights under the exception and demurrer hereinbefore filed and overruled, and for answer to the petition herein filed against the. United States, they say that they deny all and singular the allegations of plaintiff's petition, save those that may be hereinafter specially admitted.

"Respondents further particularly aver that there was no authority on their behalf to make such contract as is alleged in the petition, and particularly that there was no one authorized to make a contract binding upon the government of the United States to pay rent for any period whatever, and especially for the period of time alleged in the petition, and that there was no one authorized to contract on behalf of the government and to bind the government to either buy or rent the building referred to in the petition, and that if there were any contract which respondents deny, made by the officers of the government named in the petition, said contract is not binding and effective against the government, because said officers were not authorized to make any such contract, and no officers whatever of the government had authority to make any such contract and bind the government. And, even if the officers referred to in the petition or any other officers of the government had authority to make the contract mentioned in the petition, so as to bind the government, respondents deny that any such contract was ever made by them, or any of them, on behalf of the government, and especially deny that there was ever any final conclusion and meeting of minds and contract relative to the matters set out in the petition.

"And should this court hold that there was ever any authority on behalf of any of the officers of the government to make such a contract as alleged in the petition, and that the contract therein alleged was duly made and perfected, all of which respondents deny, respondents deny all the items of damages claimed in the petition, and especially aver that the rental of the barge referred to in the petition was unnecessary and useless, and that the barge was rented at a time before the selection of the point where the building was to be placed, and at a time when the plaintiff in this case well knew that the quarantine officer at the mouth of the Mississippi river had refused to allow him to erect a building at any point on that reservation.

"And respondents aver that the erection of the buildings referred to in the petition upon the quarantine reservation would have interfered with the administration of the United States quarantine laws and regulations, and would have been detrimental to the public health and marine hospital service and against the interest and public policy of the United States, and for these reasons said building could not be permitted upon said reservation, and any pretended agreement for the erection of such building on said reservation was null and void. Wherefore, considering the premises, respondents pray that the demand of the plaintiff herein be rejected at his costs, and for all and general relief.                    [Signed]   Charlton R. Beattie, U. S. Atty."

The case was heard and submitted upon evidence on July 23, 1912, and of that date counsel for the United States filed a request for special findings of

fact and supplemented the same on August 1, 1912; and on October 12, 1912, the trial judge entered the following findings of fact:

"In this matter I find the facts to be as follows:

"(1) I find that the plaintiff, Paul Doullut, on January 13, 1910, offered, in writing, to erect a building at Quarantine Station, La., on the government reservation, to be used by the United States customs inspectors, and to rent said building to the United States for a period of five years, at $35 per month, with the option to the government of purchasing the building at the end of the lease term, as appears by his letter of said, date to the surveyor of customs of the port of New Orleans. A copy of said letter is annexed and made part hereof, marked 'P. A.'

"(2) I find that the plans and specifications of the proposed building were approved, as showing proper construction, by H. G. Richey, a competent and experienced man, holding the position of superintendent of construction of United States public buildings under the supervising architect, on January 16, 1911, as appears by a letter of said date from H. G. Richey to Louis P. Bryant, surveyor of customs of the port of New Orleans. A copy of said letter is annexed and made part hereof, marked 'X.'

"(3) I find that subsequently plaintiff amended his proposal of offering to accept $25 per month rental, instead of $35 per month.

"(4) I find that this amended offer was accepted by the Secretary of the Treasury; that Doullut was notified of its acceptance by Henry McCall, collector of customs of the port of New Orleans; that Doullut was instructed to proceed with the construction of the proposed building—all as will appear by a letter of February 18, 1911, from Henry McCall, collector of customs at New Orleans. Said letter is annexed and made part hereof marked 'P. B.'

"(5) I find that plaintiff hired labor, bought and prepared lumber and other material, for the purpose of erecting said building, and loaded a barge with the said material, and by direction of the surveyor of customs of the port of New Orleans, transported said material to Quarantine Station, La., on the Mississippi river and in company with said official proceeded to Quarantine Station, on the 1st day of March, 1911, for the purpose of erecting the said building.

"(6) I find that plaintiff was arbitrarily denied permission to unload his material, and was prohibited to erect the building by the doctor in charge of said Quarantine Station.

"(7) I find that on March 4, 1911, plaintiff notified the United States in writing, through Henry McCall, collector of customs of the port of New Orleans, that all of said materials were loaded on the barge at New Orleans and requested that the United States designate to him the exact location at the Quarantine Station upon which the building was to be erected, and notified the United States that he was under the expense of $10 per day for the use of said barge until unloaded, as appears by the letter of March 4, 1911, from Paul Doullut to Henry McCall. A copy of said letter is annexed hereto and made part hereof, marked 'XX.'

"(8) I find that plaintiff was never permitted to erect said building.

"(9) I find that plaintiff was not notified the building would not be erected until April 29, 1911, some 52 days after he had attempted to comply with his agreement, as appears by a letter from C. S. Hebert, collector of customs of the port of New Orleans, to Capt. Paul Doullut, of said date. Said letter is annexed and made part hereof and marked 'P C.'

"(10) I find that the government reservation at Quarantine Station has a frontage of over one mile on the Mississippi river, and is large enough to permit of the erection of a separate building for the accommodation of the customs inspectors; that theretofore customs inspectors had been accommodated with quarters at the said Quarantine Station, and that they are now accommodated with quarters at the Quarantine Station; that there is no good reason why the proposed building should not have been erected; and that its occupation by the customs inspectors would not have interfered in any way with the administration and proper management of the government quarantine station.

"(11) I find that the actual location of the proposed building at Quarantine Station was a mere detail, similar to the laying out of the actual ground plan

of any building to be erected according to plans and specifications, and that plaintiff was justified in preparing to erect the building, and was directed to do so by the United States, through its proper officers.

"(12) I find that the Secretary of the Treasury was authorized, on behalf of the United States, to negotiate with the plaintiff for the erection of said building, and that he was authorized to enter into a lease for same for a period of at least one year. I further find that, as a matter of fair dealing, he would have renewed the lease from year to year, actually or impliedly, until the expiration of the full term contemplated, had the building been erected.

"(13) I find that the minds of the parties had fully met as to the character of the building, the place where it was to be erected, and the rent that the government was to pay for it; that there was a complete contract between the United States and the plaintiff to enter into a lease of said building when completed, in so far as the Secretary of the Treasury was authorized to enter into such a lease.

"(14) I find that there was a complete agreement between the plaintiff and the United States for the erection of the said building at Quarantine Station, and that said agreement was breached by the United States without fault on the part of plaintiff, and the United States was properly and regularly put in default.

"(15) I find that plaintiff was justified in believing he had a complete and binding contract with the United States for the erection of the said building, because of his dealings with the highest officials of the Treasury Department of the United States.

"(16) I find the lumber and other material bought by plaintiff for the erection of said building cost him $1,074.45, and by being cut and manufactured to dimensions especially for the erection of said building same were depreciated in value at least 25 per cent., and plaintiff incurred a loss thereby of $268.61.

"(17) I find that in addition it cost plaintiff the sum of $114 for the cutting and framing of the said timber.

"(18) I find that it was proper for him to keep the barge loaded and ready to transport said material to Quarantine Station for a reasonable time, not exceeding 30 days; that it cost him $10 per day for said period, or $300.

"(19) I find that said three items amount in the aggregate to $682.61, that this loss of the plaintiff was induced and caused solely by the fault of the United States, acting through its properly accredited officials, and that plaintiff is entitled to recover judgment for that amount against the United States."

To which findings of fact the counsel for the United States entered special exceptions which in due course were overruled.

On October 12, 1912, the trial court rendered and entered the following judgment:

"This cause came on at a former day to be heard upon the pleadings, exhibits, and oral testimony, and was argued by counsel for the respective parties and submitted to the court, whereupon, on due consideration thereof, and for the written reasons of the court on file, it is now ordered, adjudged, and decreed that the plaintiff, Paul Doullut, do have and recover of and from the defendant, the United States of America, the sum of $682.61.

"Judgment rendered October 12, 1912.

"Judgment signed October 22, 1912."

In due season the United States sued out this writ of error.

Walter Guion, U. S. Atty., of New Orleans, La.

Fernando Estopinal and Conrad G. Collins, both of New Orleans, La., for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and MAXEY, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). Assuming that the findings of fact made by the trial judge substantially cover the issues made by the pleadings, the effect thereof, properly construed, is that the contract of lease as alleged was entered into between Doullut and the United States in so far as the Secretary of the Treasury was authorized to enter into such a lease, and the question is presented whether Doullut is entitled to have judgment against the United States for damages as found resulting from breach of the contract. By demurrer, and in the answer, contention is made that the contract upon which the plaintiff below bases his suit was unauthorized by law, and that the United States is not bound thereby nor liable for any damages growing out of the breach thereof. No law authorizing the Secretary of the Treasury to make any contract of lease for a period of five years is pointed out or even suggested.

Section 3732 of the Revised Statutes (U. S. Comp. St. 1901, p. 2504) provides:

"Sec. 3732. No contract or purchase on behalf of the United States shall be made, unless the same is authorized by law or is under an appropriation adequate to its fulfillment, except in the War and Navy Departments, for clothing, subsistence, forage, fuel, quarters, or transportation, which, however, shall not exceed the necessities of the current year."

Section 3679 of the Revised Statutes (U. S. Comp. St. 1901, p. 2454) provides:

"Sec. 3679. No department of the government shall expend, in any one fiscal year, any sum in excess of appropriations made by Congress for that fiscal year, or involve the government in any contract for the future payment of money in excess of such appropriations."

In the act approved June 17, 1910, making appropriations for the executive, legislative, and judicial expenses of the government for the fiscal year ending June 30, 1911, there was appropriated as follows: "For rent of buildings, $59,286.00." See 36 St. L. pt. 1, 468–493, c. 297.

In the act approved March 4, 1911, there was appropriated to the expenses of the Treasury Department, for the fiscal year ending June 30, 1912, as follows: "And for rent of buildings $52,486.00." See Act March 4, 1911, c. 237, 36 Stat. p. 1195. And we do not find, nor are we referred to, any law authorizing the Secretary of the Treasury to make for the United States any contract for a lease, for a term of five years, of any building for the United States customs service.

In Chase v. United States, 155 U. S. 489, 15 Sup. Ct. 174, 39 L. Ed. 234, the Supreme Court held a contract with the Postmaster General for a lease of a post office for a term of 20 years was without authority, and created no liability against the United States. In the opinion of the court Mr. Justice Harlan said:

"By the law in force when the lease sued on was executed, it was made the duty of the Postmaster General 'to establish post offices.' By section 3732 of the Revised Statutes it is provided, as did, substantially, the statutes in force when the lease was made, that 'no contract or purchase on behalf of the United States shall be made unless the same is authorized by law, or is under an appropriation adequate to its fulfillment, except in the War and Navy Departments, for clothing, subsistence, forage, fuel, quarters, or transportation,

which, however, shall not exceed the necessities of the current year.' Act March 3, 1825, c. 64, § 1, 4 Stat. 102; Act March 2, 1861, c. 84, § 10, 12 Stat. 220.

"Much stress is placed by counsel for the plaintiff upon the clause making it the duty of the Postmaster General to establish post offices; the contention being that the power to establish a post office carries with it authority to lease rooms or a building in which the postmaster may conduct the business of his office. In support of this position Ware v. United States, 4 Wall. 617 [18 L. Ed. 389] is cited. But that case does not justify any such interpretation of the act of Congress. The question there was as to the power of the Postmaster General to discontinue a post office that had once been established by him under the authority conferred by the act of 1825 (4 Stat. 102) 'to establish post offices.' This court, observing that the power to discontinue post offices is incident to the power to establish them, unless there was some provision in the acts of Congress restraining its exercise, said: 'Undoubtedly, Congress might discontinue a post office which they had previously established by law, and it is difficult to see why the Postmaster General may not do the same thing when acting under an act of Congress, expressed in the very words of the Constitution from which Congress derives its power.' Again: 'Power to establish post offices and post roads is conferred upon Congress, but the policy of the government from the time the general post office was established has been to delegate the power to designate the places where the mail shall be received and delivered to the Postmaster General.' P. 632.

"There was no issue in that case as to the extent of the authority of the Postmaster General to bind the government by contract for the payment of money or for the lease of a building for a post office. That * * * did not call for any consideration of the general question, whether the words in the statute, 'to establish post offices,' had the full meaning of the same words found in the section of the Constitution enumerating the powers of Congress.

"Nor is it necessary to determine all that may be done by the Postmaster General under the power 'to establish post offices' conferred upon that officer; for those words are to be interpreted in connection with the above statutory provision forbidding the making, except in the War and Navy Departments, and in those departments only for certain things and under specified conditions, of any contract or purchase on behalf of the United States unless the same be authorized by law, or is under an appropriation adequate to its fulfillment. There is no claim that the lease in question was made under any appropriation whatever, much less one adequate to its fulfillment. So that the only inquiry is, whether the contract of lease was 'authorized by law' within the meaning of the statute relating to contracts or purchases on behalf of the government.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"We have considered the case in the light of the statutes in force when the lease of May 1, 1870, was executed. Shortly after that date, by Act July 12, 1870, c. 251, § 7, 16 Stat. 251, it was provided that no department of the government should expend, in any one year, any sum in excess of appropriations made by Congress for that fiscal year, or involve the government in any contract for the future payment of money in excess of such appropriations. And that provision is reproduced in section 3679 of the Revised Statutes."

In Abbott v. United States (C. C.) 66 Fed. 448, Chase v. United States, supra, was followed and a contract to lease a post office to be erected, for a term of five years, entered into by the Postmaster General, was held to be without authority, and not binding upon the United States.

In Hooe v. United States, 218 U. S. 322, 334, 31 Sup. Ct. 85, 88 (54 L. Ed. 1055), a case involving the same question the Supreme Court said:

"If an officer, upon his own responsibility and without the authority of Congress, assumes to bind the government, by express or implied contract, to

pay a sum in excess of that limited by Congress for the purposes of such a contract, the contract is a nullity, so far as the government is concerned, and no legal obligation arises upon its part to meet its provisions. If the circumstances justify such a course, Congress in its discretion can intervene and do justice to the owner of private property used by officers of the government in good faith for public purposes, although without direct legislative authority. The plaintiffs' remedy is in that direction."

Following these decisions, we are constrained to hold that the contract sued on in this case was without authority of law and not binding upon the United States.

The judgment of the District Court is reversed, and the cause is remanded, with instructions to dismiss the suit.