Riohakdson, J.,
delivered the opinion of the court:
On the 15th day of May, 1874, the claimant entered into a written contract with the defendants to furnish and deliver 1,000 cubic yards, more or less, of rabble-stone for building a courthouse and post-office at Raleigh, F. 0., at $5 per yard net measurement in the building. In pursuance of his agreements he delivered 50 cubic yards of such stone at the site for the building, and he had quarried, ready for delivery, 250 cubic yards more, when the assistant superintendent, who had the immediate charge of the work for the defendants, rejected the stone delivered and refused to receive any more of the same kind, not because, it was not up to the staudard called for by the contract, but because he desired to make a wall superior to that specified, and he described to the claimant the kind of stone which he should require, and which was in fact an altogether different class of stone, a ranged rubble or broken ashlar, worth $12.50 per cubic yard.
Rubble-stones are rough, irregular stones, such as are found in quarries that furnish small and inferior stone only, or are the remains in ledges from which dimension or other large stones have been taken; and when used for constructing walls they are not dressed, hewn, or cut, and so lose none of their measurement in laying. Ranged rubble or broken ashlar are ordinarily a larger stone, which, wlieu cut, trimmed, and laid, make a wall of coursed masonry as if constructed of squared stone of different sizes, somewhat like that produced by dimension-stone ; and in cutting they are reduced in size, and measure much less in the wall than when first quarried. Such a wall is a more expensive one than that made of rubble-stone, and it was such a wall that the assistant superintendent desired to construct, notwithstanding the contract and specifications.
This was a clear departure from the terms of the contract, and the claimant might then have declined to follow the directions of the assistant superintendent; and, if they were persisted in, he might have maintained an action against the defendants for breach of contract in preventing him from going on with his work, or he might have notified the defendants that if he furnished such stone as the assistant superintendent required — a stone materially different and more expensive than that called for by his agreement — he should not deliver it under *189 the contract at contract-price, but should claim such compensation as the material was worth. Had he thus promptly notified the defendants, they would have had an opportunity to determine whether they would overrule the directions of the assistant superintendent or would go on according to his wishes and construct a more expensive wall than had been contemplated. But this opportunity was lost to them by the claimant’s ready submission to the wishes of the assistant superintendent and by his long silence as to auy claim for greater compensation. It was his duty, when he was requested to deliver stone of a higher grade and more expensive kind than that contracted for, before he had delivered any such stone and before the defendants had acted upon the change, to have given notice and asserted his intention to demand a higher price therefor. He could not lie by and allow the defendants to go on upon the supposition on their part that they were incurring no extra expense until it was too late for them to recede, and then successfully spring upon them a claim for other and different and greater compensation than had been agreed upon. (Merrill et al. v. The Ithaca & Owego R. R. Co., 16 Wend., 587.)
This change in the character of the wall to be constructed, and consequently of the stone required, appears to have been instituted by the assistant superintendent of his own motion, without the knowledge of the Supervising Architect of the Treasury Department until the work was nearly done, and without the knowledge or approval of the Secretary of the Treasury, whose written consent was required by an express provision of the contract to any departure from its condition. This change the claimant at once submitted to, and expressed a willingness and a desire to furnish such material as would give perfect satisfaction to the Government and its agents, only maintaining that he thought the stone he delivered Aas up to the contract, and afterward, from time to time, asserting no more than that he was required to furnish a stone superior to that called for by the contract. These declarations did not necessarily imply that he intended or expected to charge a higher price, but merely that, to meet the wishes of the defendants’ officers, he was doing better than he agreed to do.
It was not until August, more than two months after he had begun to deliver the higher class of stone, which he had been furnishing almost every week in the mean time, and when his *190 work was nearly half clone and the building so far advanced with a ranged-rubble or broken-ashlar wall that it could not be altered, and must be finished as begun, that he first announced to the superintendents, and a special ageut of the Treasury Department sent to inspect the work and set them right on it, his intention to make claim for an extra allowance, and it does not appear that this intention was ever communicated to the Secretary of the Treasury, for whom the contract was entered into, nor to the Supervising Architect, although at a later date the latter officer visited the work and was shown that the wall was superior to that contemplated by the specification; but nothing was said that would lead him to suppose the contractor was expecting larger compensation for the stone than the price agreed upon.
■ Besides, the claimant signed four vouchers for payments made on account, while delivering these stone, three of them apparently before the announcement of his intention to claim an extra allowance, and one afterward, in all of which the stone delivered is called “ rubble-stonethe price charged is the contract-price of $5 per cubic yard, and in the last three vouchers the contract is expressly referred to. These vouchers, thus made out and signed by the claimant, must have been forwarded to the Treasury Department, and there fallen under the inspection of the Architect’s Office, and, constructively, under the eye of the Secretary of the Treasury.
Under these circumstances the Secretary and the Supervising Architect had no reason whatever to suppose that the claimant was delivering stone for which he claimed any other or greater price than that specified in the contract, nor. had the superintendent and special agent any reason for such a supposition until it was too late to make other arrangements.
By his iown acts, therefore, the claimant led the defendants to believe, while the work was going on, that he was delivering the stone at the contract-price, and he is estopped from setting up, after the work is completed, any greater rate of compensation.
On the other hand, the claimant is entitled to recover the contract-price for all the stone actually delivered by him in good faith and in the fulfillment of his agreements. Whatever stone he delivered which the defendants’ Officers unwarrantably rejected, wasted, or misused, and applied to purposes not con *191 templated by the contract, they must pay for, as well as for those that went into the walls of the building. And so the claimant is entitled to payment for the 50 cubic yards of rubble-stone first delivered and rejected, and which the facts find to have been such as came within the description of those required, deducting therefrom the market-value thereof, because they were taken away by the claimant, and to that extent he has been compensated; and for the 230^ yards quarried, and refused by the defendants, he is entitled to the amount found as the worth of the quarrying, less the market-value.
He furnished also 958| cubic yards of ranged-rubble or broken-ashlar stone, and had those been laid as oontemplated by the specifications in such manner as to have constructed a “rubble wall” he would have been entitled to recover according to their net measurement in the wall, such being the express provision of the contract; but in that case the stone would not have been cut away, and they would have measured substantially the same after as before they were laid. The defendants’ officers, in order to construct a wall of different kind and superior appearance to that originally designed and specified, with their workmen so cut, trimmed, and squared the stone delivered, that they lost 25 per cent, in measurement when laid in the wall. This was manifestly not warranted by the contract, and was a violation by the defendants of their plain obligation. It was done after the claimant had fulfilled his agreements, was not assented to by him, and was beyond his control to prevent.
The “net measurement” mentioned in the contract, by which the claimant was to have been paid, had reference to the “rubble wall” contemplated therein, in the construction of which the claimant’s stone would have lost little or nothing from the quantity delivered. When the defendants changed the character of the wall to be constructed, and cut, trimmed, and squared the stone contrary to the intent of the contract, and then wasted or deprived the claimant of the net measurement in the wall of 25 per cent, thereof, they became liable to pay for the wasted or unused material as well as for that which they did use, and the claimant is entitled to recover for the whole 958| cubic yards delivered by him, at the contract-price.
The account between the parties, as allowed to claimant, is thus stated:

*192

And judgment will be entered for the claimant for the balance, $1,566. 95, thus found due him.
Peck, J., was absent when this case was heard, and took no part in the decision.