WeldoN, J.,
delivered the opinion of the court:
The claim of the petitioner is founded on a lease executed on the 30th of August, 1892, of certain premises in the city of Provo, in the then Territory of Utah, to be used by the defendants for the purpose of holding the United States court' of that Territory. The term of the lease is, that the rent was to commence and run from year to year for the period of five years from the date of occupancy, which was on the 13th day of February, 1893.
*423 At the time of the execution of tbe lease the house on the premises had not been erected; but upon the faith of such a lease the claimant proceeded to erect the building- which was completed at the time when the occupancy commenced. The defendants were to paj^ a yearly rental of $2,000 in quarterly pa3’ments.
The premises were occupied as a court-house from the 13th of February, 1893, to the 4th of January, 1896. The rent was fully paid until the 31st of December, 1895, and a tender made to the claimant for the four days’ rent from the 31st of December, 1895, to the 4th of January, 1896, by issuing to claimant a warrant for the sum of $21.98, which was refused by the claimant. The premises, from the time they ceased to be used by the defendants, to the end of five years from the 13th of February remained vacant, the claimant not having taking-possession of the same and refusing applications for its rental. This suit was brought to recover rent at the rate of $2,000 per 3'ear from the date of the last payment to the end of the term, amounting to the sum of $4,300. The findings show that the defendants did not formally redeliver possession of the premises to the cL'mant or attempt to do so by an offer to return the keys, nor did they give him formal notice that they had vacated the premises; but shortly after the expiration of the term the claimant requested and secured the keys from a deputy marshal. After the 4th of January, 1896, some furniture and papers remained in one of the rooms of the building, and a deputy marshal of the United States continued to use one of the rooms during the year 1896. It is insisted by the claimant that the United States are liable to payment for the whole of the term, although it was not needed or used by them as a place of holding the courts of the United States.
It is also contended on the part of the claimant that this case differs from an ordinary case of leasing, that the appropriation act gave the Attorney-General authority to enter into a contract with the claimant to erect a building and to pay him the expense of preparing the building for the occupancy of the Government; and that being so, the case is not analogous to the case of Chase v. The United States (155 U. S., 489) and the case of McCullom v. The United States (17 C. Cls. R., 92), cited by defendants’ counsel.
*424 The authority of the Attorney-General to rent a building for the use of the defendants did not confer upon him the light to make a contract with the claimant to erect a building, and the liability of the defendants must be determined and measured upon what he may have done in the execution of a lease of the premises for the occupancy and use of the United States. To saj^ that the Attorney-General could use the funds of the United States in the erection of buildings would be a perversion of the power and authority conferred upon him by the law, which is the warrant of his authority.
The contention on the part of the defendants is, that as to the whole of the term' there is no liability on the part of the United States, and therefore no right of recovery on the part of the claimant to that extent; that the lease is “ from year to year,” and if the lessee were not the Government and restricted in its powers to an existing appropriation, the defendants could not be held for a longer period than one year.
The main contention of the defendants is, that the power of the officers of the United States was limited by the appropriation acts, and beyond the provision made by such acts the agents of the defendants had no right to contract, and therefore all obligations entered into or assumed by them beyond the provisions of the appropriation act are null and void; that they are special agents, limited in their powers by the statute, and the public are bound to know the limits of their authority. (Floyd Acceptance cases, 7 Wall., 666-680.)
The question, therefore, is, What is the legal effect of the contract? Is it operative as between the parties to the full extent of the term of five years ?
It is said by counsel for claimant:
“ Whether the Attorney-General was justified in continuing the rental of this building is a question which does not arise in this case. He may have intended to retain possession. Good faith clearly required him to do so if he lawfully could. In view of the fact that the continuous occupancy of the property by the Government for five years was the material consideration on which the building was erected as it was, and without which the building itself would never have been erected, much less leased to the Government. The fact is, he did not give up the premises, and his failure to do so was the failure of the United States.”
*425 While there ivas not a formal- surrender of the premises there was a substantial abandonment of them, and the-plaintiff was in legal effect notified of such abandonment by the attempted payment of rent for the four days in January, 1896, the fourth day being the day on which the use of the building as a court-house by the United States terminated.
The lease, as a contract, terminated at the end of the fiscal year in 1896, that period of termination marked the limit of the defendants’ responsibility as lessees, and the failure of the defendants to specially notify the claimant by formal surrender did not have the legal effect to carry the obligations of the contract beyond the 1st of July, 1896. The occupancy by a deputy marshal, as shown by the findings, to the end of 1896, would not have the legal effect of making the defendants liable as lessees beyond the limitation fixed by the effect of the statute.
The counsel for claimant places a liability on the defendants, for the reason that there being no surrender of the premises, there was a holding over which would by its legal effect continue the lease, and to sustain that theory of his contention cites the case of Lovett v. The United States (12 C. Cls. R., 67, 84), in which the Supreme Court has said:
“The United States were not bound absolutely to keep the premises for a longer term than one year. After that they could make new terms or leave.”
In that connection the counsel cites the case of Morgan v. The United States (14 C. Cls. R., 319), in which it is said:
“It is a fundamental principle of landlord and tenant law that a tenant holding over after the expiration of his term amid circumstances which import a continuance of the relation of landlord and tenant continues to hold upon the conditions of the lease and to be liable for such rent as it reserves.”
Applying the law of that case to the facts of this case, the circumstances clearty indicate that there was no intention on the part of the defendants to continue the lease of the premises after the 4th day of January, 1896, because on that day there was a substantial abandonment of the premises and a tender of the rent, as shown in the finding, to the claimant-some time thereafter and before the 1st of July, 1896, clearly *426 indicating to the lessor a purpose on the part of the lessee to terminate the tenancj'. The findings of fact show that numerous applications were made to the claimant to rent the premises, but he declined to do so upon the ground that they had been or were rented to the United States, which was, in legal effect, that the claimant insisted upon his construction of the lease, to wit, that it was a renting for five years and the tenancy was not terminated. The refusal of the claimant did not necessarily contradict the contention that the defendants had substantially abandoned the use of the premises.
The tender of rent up to the 4th of January, 1893, was in substance a notice to the claimant that the use and occupation of the premises had been abandoned on the part of the defendants.
The provisions of the lease as applicable to the contention of the defendants are as follows:
“To have and to hold said premises with the appurtenances, unto the said party of the second part, from year to year for the period of five years from date of occupation, on the following conditions, to wit:
“First, that this lease shall terminate at such time that Congress shall, previous to the expiration of the five years above mentioned, erect a public building in Provo for the use of the courts and other purposes.
“Second, that in case the. appropriation for lease in any year shall fail the lessor would wait for a deficiency appropriation by Congress upon the recommendation of the Attorney-General.”
In addition to the contention of the counsel for the defendants upon the appropriation act it is further insisted that under the foregoing clauses of the lease it is nothing more than a lease from year to year, and that the words “for the period of five years” are limited by the words “from year to year,” and that without the effect of the statute of appropriation there would be no liability upon the defendants for the whole term of five years. It is not necessary for us to pass upon this phase of the contention in the view we have taken of the law applicable to the lease and controversy.
If, as we have decided, the limitation of the lease was by the statute fixed at the end of June, 1896, the fact that some portions of the building were occupied by one of the *427 deputy marshals will' not have the effect of extending the terms of the lease beyond that time. He was not the agent of the United States to extend the terms of the lease by an occupancy of one of the rooms, it may be for his personal purpose, beyond the time fixed by the application of the statute.
In the consideration of the question of the liability of the defendants the section of the Revised Statutes No. 3732 may be cited, which provides as follows:
“No contract or purchase on behalf of the United States shall be made unless the same is authorized by law or is under an appropriation adequate to its fulfillment, except in the War and Navy Departments, for clothing, subsistence, forage, fuel, quarters, or transportation, which, however, shall not exceed the necessities of the current jmar.”
Section 7639, Revised Statutes, provides:
“ No Department of the Government shall expend in any one fiscal year any sum in excess of the appropriations made try Congress for that fiscal year, or involve the Government in any contract for the future payment of mone}*" in excess of such appropriation.”
The provisions of the sections clearly limit the liability of the Government by the appropriations made for each fiscal year, and the contract of the kind embraced in this proceeding is impressed with the limitations of those sections. The right of the Attorney-General to lease buildings for the use of the United States (as the building in this case was leased) was within the limit of time covered by the appropriation act for the current 3'ear.
In the case of McCollum v. The United States (17 C. Cls. R., 92) it is said:
“ In other words, a lease for a term of years founded on an annual appropriation is binding on the Government only until the end of that jrear, with a future option from year to jmar till the end of tire lease. Such is the effect of the contract and the statutes taken together, to which the contracting-parties must be held to have agreed.”
In the case of Pierce v. The United States (7 Wall., 666) it is said in affirmation of the judgment of this court:
“Our statute books are filled with acts authorizing the making of contracts with the Government through its various *428 officers and departments; but in eveiy instance the person entering into such contract must look to the statute under which it is made, and see for himself, that it comes within the terms of the contract.”
In the case of Chase v. The United States (155 U. S. 489), the' question as to the right of the Postmaster-General to make a contract for the rental of a building for the space of twenty years became the subject of adjudication, and it was held in substance that the Postmaster-General had no authority to make such a contract under his power to establish post-offices, the contention being that the power to establish post-offices carries with it the authority to lease rooms in which to conduct the business of a post-office. As against that contention the Supreme Court held that section 3679 of the Revised Statutes was a limitation on his power, and the contract, therefore, of a lease for twenty years was not binding on the United States.
The statutes, and decisions of the Supreme and this court applied to the facts of this case make the contract between the parties good as a lease of the demised premises from the 13th day of February, 1893, to the 30th day of June, 1896, at the rate of $2,000 per year, which is substantially conceded by the defendants. The rent was paid to the 31st day of December, 1895, and from that time until the 1st day of Juty, 1896, the claimant has a right to recover at the rate of $2,000 per year, which, being computed at that rate, amounts to the sum of $1,000, and for that amount the claimant is entitled to recover. A judgment is therefore ordered for the sum of ($1,000) one thousand dollars.