Barney, J.,
delivered the opinion of the court:
This is a suit to recover $9,000 for additional compensation for the use and occupation by the United States Civil Service Commission of the claimants’ office building, situated on the northwest corner of Eighth and E streets NW., in the city of Washington, during the five years beginning August 1, 1900, and ending August 1, 1905.
The facts in the case are as follows: July 10, 1900, the Secretary of the Interior entered into a written lease for said building, exclusive of the basement, for the use of the Civil Service Commission, for the term of eleven months beginning August 1, 1900, and ending June 30, 1901, for the agreed rental of $333,334 per month. August 1, 1900, the Civil Service Commission took possession of the entire building, including the basement, and continued in exclusive possession thereof until the bringing of this suit, August 1,1905. This lease was entered into pursuant to an appropriation by Congress of $4,000 for rent for quarters for the Civil Service *252 Commission for the fiscal year ending June 30, 1901. Congress afterwards appropriated the same sum for rent of quarters for the said commission for the fiscal year ending June 80, 1902, but the claimants refused to renew the lease for that year, insisting that an increase of rental to $6,000 should be allowed them. The Civil Service Commission, however, continued its occupation of the building, including the basement, the defendants for the latter fiscal year paying rent at the rate of $4,000 per annum. Congress made the same appropriation for rent for the fiscal year ending June 30, 1903. The written lease was not renewed; the claimants again insisted that a rental of $6,000 should be allowed them, and the Civil Service Commission continued to occupy the whole building for the fiscal year ending June 30, 1903, and the defendants continued to pay rent therefor at the rate of $4,000 per annum. Congress appropriated $4,500 for rent for quarters for the fiscal year ending June 30, 1904, whereupon the Secretary of the Interior entered into a lease with the claimants for that fiscal year for all of said building, except the basement, at the rate of $4,500 per annum; and the commission continued to occupy the basement as before. Congress again appropriated $4,500 for rent for the commission for the fiscal year ending June 30, 1905, and the Secretary of the Interior requested the claimants to renew the lease last mentioned for the latter year, but the claimants declined and asked an allowance of 30 cents per square foot for the use of said basement. No further action, however, was taken by either party with reference to the renewal of the lease or the increase of rental. The defendants continued in possession of the whole building for that fiscal year and paid rent therefor at the rate of $4,500 per annum. The same appropriation for rent was made by Congress for the fiscal year ending June 30, 1906, and the commission continued in possession of the whole building without any renewal of the written lease until August 1, 1905, and for which the claimants have been paid rent at the rate of $4,500 per annum. During these years the claimants have receipted for the rent paid them in full except for the basement, which has always been excepted.
*253 The claim of the plaintiffs is made up of two distinct parts, and which require separate consideration: (1) An increase of rent for the building, exclusive of the basement, during such part of the five years as it was used and occupied without any written lease, and (2) rent for the basement of the building (which was never included in any lease) during the whole term of five years.
I. The facts touching the first claim, briefly stated, are: The commission occupied the building from August 1, 1900, to June 30, 1901, under a written lease, the defendants paying a rental therefor at the rate of $4,000 per year, and held over without any renewal of the lease until June 30, 1903, in the meantime paying the same rental. The written lease for the following fiscal year, ending June 30, 1904, was renewed at the rate of $4,500 per annum, and the commission occupied the building under it for that fiscal year, and held over until August 1, 1905, without any renewal of the lease, but during the latter period paying rental at the rate of $4,500 per annum, as specified in the latter written lease.
It is evident that during such part of the period of five years, extending from August 1, 1900, to August 1, 1905, as the Government occupied the building without any written lease it was as a tenant holding over after the expiration of the former written leases. The alleged demands for possession on the part of the claimants were nothing more than threats for the purpose of securing a higher rental, and never ripened into a denial of the relation of landlord and tenant. This conclusion is made positive by the fact that during the whole period the clamants receipted in full for the rent received, exclusive of the basement, without any protest, except continuous complaint that they were not getting enough rent for the building.
It hardly seems necessary to quote or even cite authorities to show that the complaints and threats of the claimants did' not amount to a notice to quit. (Taylor's Landlord and Tenant, sec. 483, and cases cited.)
It is also elementary that where the landlord suffers the tenant to remain in possession after the expiration of his lease the law presumes the holding to be upon the same *254 terms as the written lease under which the entry was made. (Taylor’s Landlord and Tenant, sec. 525; Lovett v. United States, 12 C. Cls., 67, 84; Salisbury v. Hale, 12 Pick., 332.) The receipts in full given by the claimants enlarge this presumption into a positive conclusion. (United States v. Childs, 12 Wall., 232; Murphy v. United States, 104 U. S., 464; De Arnaud v. United States, 151 U. S., 483.) It has been held that acceptance of rent at a reduced rate after the expiration of a lease is conclusive evidence of modification of the lease. (United States v. Bostwick, 94 U. S., 67.)
It follows, therefore, conclusively, that the claimants can not recover under the first division of their case. It should be added, however, that the reasons hereinafter given for denying recovery under the second division apply with equal force to the first.
II. It is contended by the claimants that as the basement of the building was never included in any of the leases they are entitled to recover reasonable rent for the same during the whole period of five years upon an implied contract to that effect; and it is undoubtedly true that if the Government were an ordinary tenant such contention would be correct.
The several appropriation acts of Congress making provisions for the rent for quarters for the Civil Service Commission for the several years while the building of the claimants was so occupied, leaving out everything except the specific appropriation, were as follows:
“ That the following sums be, and the same are hereby, appropriated out of any money in the Treasury not otherwise appropriated, in full compensation for the service of the fiscal year * * * for the objects hereinafter expressly named: * * * For rent * * * Civil Service Commission, four thousand dollars.”
The laws then in force relating to this subject were as follows:
“ Sec. 3679. No department of the Government shall expend, in any one fiscal year, any sum in excess of appropriations made by Congress for that fiscal year, or involve the Government in any contract for the future payment of money in excess of such appropriations.
“ Sec. 3732. No contract or purchase on behalf of the United States shall be made unless the same is authorized by *255 law or is under an appropriation adequate to its fulfillment, except in the War and Navy departments, for clothing, subsistence, forage, fuel, quarters, or transportation, which, however, shall not exceed the necessities of the current year.”'
Act of June 22,1874 (18 Stat. L., 144):
“And hereafter no contract shall be made for the rent of any building or part of any building in Washington, not now in use by the Government, to be used for the purposes of the Government until an appropriation therefor shall be made iii terms by Congress.”
Act of March 3, 1877 (19 Stat. L., 370):
“And hereafter no contract shall be made for the rent of any building or part of any building, to be used for the purpose of the Government in the District of Columbia, until an appropriation therefor shall have been made in terms by Congress, and that this clause be regarded as notice to all contractors or lessors of any such building or part of building.”
The counsel on both sides in this case have shown great industry and displayed much learning in the discussion of the question involved, as its importance has well justified.
The claimants rely much upon the law of Congress creating the Civil Service Commission (22 Stat. L., 403), which provides as follows:
“ That it shall be the duty of the Secretary of the Interior to cause suitable and convenient rooms and accommodations to be assigned or provided, and to be furnished, heated, and lighted, at the city of Washington, for carrying on the work of said commission and said-examinations, and to cause the necessary stationery and other articles to be supplied, and the necessary printing to be done for said commission.”
In reference to this statute it might be sufficient to say that there is nothing in this case to show that the Secretary of the Interior ever had anything to do with directing the occupation of the basement in question, either in person or by implication. It does not appear in any way how or why this was done, the simple fact only appearing that when the Civil Service Commission moved into the building of the claimants it took possession of the whole of it.
If Congress had made no provision for such rent, doubtless the Secretary of the Interior could have secured quarters for *256 the Civil Service Commission and involved the Government for payment of rent for the same. But Congress did make a specific appropriation for that purpose, and said that was all it would give.
Under the Constitution Congress holds the purse strings of the Government, and we do not think that by evasion or indirection any officer of the Government can deprive that body of this important privilege. Mr. Justice Story, in his Commentaries on the Constitution, in discussing this privilege of Congress, said: “ The power to control and direct the appropriations constitutes a most useful and salutary check upon profusion and extravagance, as well as upon corrupt influence and public speculation.” (2 Story Com., sec. 1348.)
It has frequently been decided that where an individual enters into a government contract with one of its officers, he must take notice of the extent of authority conferred by law upon such officer. This is but an enforcement of the well-established principle that ignorantia legis non excusat (Hawkins v. United States, 12 C. Cls. R., 181; s. c. 96 U. S., 689). The facts in the present case show that the claimants had actual as well as presumptive notice of the extent of the authority of the Secretary of the Interior to enter into a contract for rent for the Civil Service Commission; for during the whole period they were persistently complaining of the small amount which Congress was appropriating for that purpose.
In fact, the opening paragraph of each of the written leases in this case shows a recognition by all parties of the source of authority to contract for rent for the Civil Service Commission, and which is as folows:
“ Witnesseth: That in pursuance of authority conferred by an act of Congress approved April 17, 1900, entitled ‘An act making appropriations for the legislative, executive, and judicial expenses of the Government for the fiscal year ending June thirtieth, nineteen hundred and one, and for other purposes,’ wherein appropriation is made ‘ For rent of buildings for the Department of the Interior, namely * * *
for the Civil Service Commission,’ the said parties have covenanted and agreed, and by these presents do covenant and agree, to and with each other as follows: ”
*257 In the case of Semmes and Barbour v. United States (26 C. Cls., 119) cited by claimants, it appeared that the Post-Office Department, after the expiration of a lease for its use, continued to occupy certain premises in the city of Washington under no express contract for rent; and it was held that thereby an implied contract arose to pay a reasonable amount of rent for the same. It does not appear, however, that there was ever any limited appropriation by Congress to pay any rent for the building occupied during such time, or any limited appropriation for rent generally for the post-office at Washington. It should further be observed that the decision in that case is based largely upon the proposition that this occupation was ordered by the Postmaster-General. In other words, in that case the Postmaster-General, without any limitation upon the subject of rent by any law of Congress, ordered the occupation of the claimants’ building for the necessary purposes of his department, and that was held to be no violation of the law.
In that case it was held that section 3679, Revised Statutes, only forbids the execution of an express contract in a sum in excess of appropriations, and that notwithstanding this statute implied contracts might arise from the acts of public officers in the performance of their duties carrying on the business of the Government entrusted to them by law in their respective spheres; and the same construction has been given to that statute in numerous other cases. But no case has been called to our attention where it has been decided that an implied contract might arise under the circumstances of the case at bar. In none of the numerous cases cited by the claimants construing the statutes above quoted, does it appear that a limited appropriation had been made by Congress for a particular purpose, and that an additional expense had been incurred by a subordinate official for which payment was demanded.
In this connection it may be well to quote the language of the Supreme Court (the italics being ours) in the case of Chase v. United States (155 U. S., 489, 502):
“ While the Postmaster-General, under the power to establish post-offices, may designate the places, that is, the locali *258 ties, at wliich the mails are to be received, he can not bind the United States by any lease or purchase of a building to be used for the purposes of a post-office unless the power to do so is derived from a statute which either expressly or by necessary implication authorizes him to make such lease or purchase. The general authority ‘ to establish post-offices ’ does not itself, or without more, necessarily imply authority to bind the United States by a contract to lease or purchase a post-office building, although an appropriation of money to pay for the rent of a post-office building at a named place might give authority to the Postmaster-General to lease such building in that locality as he deemed proper for the service, always keeping within the amount so appropriated. So, also, the power to lease a building to be used as a post-office may be implied from a general appropriation of money to pay for rent of post-offices in any particular fiscal year or years.”
In the Smoot case (38 C. Cls., 418) there was no question of implied contract involved. On the contrary, in that case there was too much of an express contract, i. e., a written lease for five years, and occupancy for less than three. It was there held that this contract was only binding upon the Government to the end of the fiscal year in which it was made, with a future option from year to year to the end of the term; but that when the Government abandons leased premises under such circumstances in the midst of a fiscal year, it is liable for rent for the whole of that year. In the same case it is held that “occupancy by an unauthorized officer of the United States will not have the effect of continuing a lease.” {Id., 427.)
During all of the time for which additional rent is sought to be recovered in this case, the law forbade any department of the Government from involving the Government in any express contract for rent for quarters for the Civil Service Commission in any sum in excess of the amount specifically appropriated for that purpose. Congress, from year to year, specifically appropriated a sum for each fiscal year in full for that purpose, and the Secretary of the Interior, pursuant to such appropriations, has rented quarters for that commission.
To now hold that the Civil Service Commission can take possession of the whole of a building, a part of which has *259 been rented for its use pursuant to an act of Congress, and make the Government liable for this additional expense,, would be equivalent to saying that Congress is powerless in f limiting the expenses of the Government. Under such a hold-1 ing the Civil Service Commission might have “ swarmed ” into possession of the whole block in which they were located and involved the Government in payment for rent of the same. Such a ruling would place the Treasury of the Government at the mercy and convenience of every one of its officers. We have been cited to no authority sustaining such a conclusion, and do not believe it to be the law.
We might add that section 3679, R. S., supra, has recently been amended by Congress by providing:
“ Nor shall any department or any officer of the Government accept voluntary service for the Government or employ personal service in excess of that authorized by law, except in cases of sudden emergency involving the loss of human life or the destruction of property. All appropriations made for contingent expenses or other general purposes, except appropriations made in fulfillment of contract obligations expressly authorized by law, or for objects required or authorized by law without reference to the amounts annually appropriated therefor, shall, on or before the beginning of each fiscal year, be so apportioned by monthly or other allotments as to prevent expenditures in one portion of the year which may necessitate deficiency or additional appropriations to complete the service of the fiscal year for which said appropriations are made; and all such apportionments shall be adhered to and shall not be waived or modified except upon the happening of some extraordinary emergency or unusual circumstance which could not be anticipated at the time of making such apportionment, but this provision shall not apply to the contingent appropriations of the Senate or House of Representatives; and in case said apportionments are waived or modified as herein provided, the same shall be waived or modified in writing by the head of such executive department or other government establishment having control of the expenditure, and the reasons therefor shall be fully set forth in each particular case and communicated to Congress in connection with estimates for any additional appropriations required on account thereof. Any person violating any provision of this section shall be summarily removed from office and may also be punished by a fine of not less than one hundred dollars or by imprisonment for not less than one month.” (1, 34 Stat., 49.)
*260 Thus we see that Congress has not only said that its specific appropriations must not be exceeded for any fiscal year, but that they must be so apportioned throughout the year as to prevent a deficiency, with the provision of a penalty for a •violation of this most salutary law.
If, by indirection, any officer of the Government can evade this statute by involving the Government in implied contracts, Congress might as well hereafter make no specific appropriations at all, but leave it to subordinate officers of the Government to make the bills, and pay them by appropriations in gross.
It is ordered that judgment be entered for the defendants, dismissing the petition.