Hat, Judge,
delivered the opinion of the court:
The plaintiff relies upon the provision of the Dent Act (40 Stat. 1272). Section 1 of that act provides as follows:
“That the Secretary of War be, and he is hereby, authorized to adjust, pay, or discharge any agreement, express or implied, upon a fair and equitable basis that has been entered into, in good faith during the present emergency and prior to November 12, 1918, by any officer or agent acting under his authority, direction, or instruction, or that of the President, with any person, firm, or corporation for the *103 acquisition of lands, or the use thereof, or for damages resulting from notice by the Government of its intention to acquire or use said lands, or for the production, manufacture, sale, acquisition or control of equipment, materials or supplies, or for services, or for facilities, or other purposes connected with the prosecution of the war, when such agreement has been performed in whole or in part, or expenditures have been made or obligations incurred upon the faith of the same by any such person, firm, or corporation, prior to November 12, 1918, and such agreement has not been executed in the manner prescribed by law: Provided, That in no case shall any award either by the Secretary of War or the Court of Claims include prospective or possible profits on any part of the contract beyond the goods and supplies delivered to and accepted by the United States and a reasonable remuneration for expenditures and obligations or liabilities necessarily incurred in performing or preparing to perform said contract or order * * ■
The plaintiff claims under what it alleges was an express contract between it and Benedict M. Holden, depot quartermaster at Philadelphia, that this contract was made in July, 1918, and that said Holden was “ an officer or agent acting under the authority, direction, or instruction of the Secretary of War.” The terms of this contract are alleged to have been that the plaintiff on its part was to rent and equip a floor of a building in Philadelphia for the production of Army uniforms, and that the depot quartermaster would see to it that the plaintiff would receive contracts from the United States in sufficient quantity to compensate it for any loss which it might incur by reason of such rental and equipment.
The facts are that the plaintiff, upon being urged by the depot quartermaster to increase its facilities for the production of Army uniforms, advised the depot quartermaster that it could only do so by renting a floor of a building in Philadelphia; that three years was the shortest term for which it could rent the building; and that the rent and the cost of equipment would be from $75,000 to $100,000, and that the plaintiff would not incur this cost unless it could be assured that it would receive a sufficient number of contracts to compensate it for the outlay and obligations so incurred. The depot quartermaster urged the plaintiff to *104 increase its capacity, and stated that he was satisfied that the plaintiff would receive contracts from the United States Government sufficient to compensate it for making the investment. It Avas suggested by the plaintiff that the war might end. The depot quartermaster answered that if it did the United States would be obliged to keep an army of occupation in Europe for some time to come, and this army would need uniforms. As a result of this conversation with the depot quartermaster the plaintiff proceeded to rent the building and to equip it for the manufacture of uniforms for the United States Army. The building was ready for work about the middle of September, 1918, and the plaintiff was given contracts for the manufacture of uniforms. Before these contracts were completed the armistice was entered into on November 11, 1918, and a few days thereafter the contracts which had been awarded to the plaintiff were canceled. As a result the plaintiff discontinued its work in the building so rented and proceeded to dispose of the lease and of the equipment at the best price it could obtain for the same.
The total cost of,the factory, including the lease, was $86,128.53; the amount realized by the plaintiff from the sale of said lease and equipment was the sum of $42,372.29; and the loss to the plaintiff, upon the transaction was the sum of $43,756.24. And this sum, the plaintiff alleges, the United States must pay by reason of the promises made to it by the depot quartermaster at Philadelphia.
' It does not seem to us that there has been any contract proved between the parties, either express or implied. The promise of the officer to supply the plaintiff with future contracts sufficient to compensate it for the expenditure of money for equipment and rent is not such a promise as the Dent Act contemplates. The circumstances surrounding this transaction are such as to lead to the conclusion that the plaintiff was relying on the promise made to it for obtaining future contracts in the event of the continuance of the war, or if the war did not continue then on the event’ of the United States maintaining an army of occupation in Europe. In either case the plaintiff proceeded upon promises made to it by one who had no authority to obligate the *105 United States to a continuance of work for which the Government might have no use. The plaintiff, in making the expenditure, relying upon the opinion of the depot quartermaster, took the chance that the war would continue, or that if it did not there would still be the chance of using the building which it rented and equipped. There was no duress, no order directing the plaintiff to rent and equip the building, and, so far as the record discloses, there was no authority lodged in the depot quartermaster which authorized him to enter into a contract with the plaintiff or anyone else to rent and equip that or any other building.
The plaintiff was bound to know and to take notice of the limited authority of the officer with whom it was dealing. Baltimore & Ohio R. R. Co. v. United States, 51 C. Cls. 140, 150. There are no circumstances here which can be held to relieve the plaintiff from its responsibility. It is said by the Supreme Court in the case of Baltimore & Ohio R. R. Co. v. United States, 261 U. S. 592, 596: “The act was intended to remedy irregularities and infomalities in the mode of entering into such agreements; not to enlarge the authority of the agents by whom they were made. To entitle the claimant to compensation under such an agreement it is essential that the officer or agent with whom it was entered into should not merely have been holding under the Secretary of War or the President but that he should have been acting within the scope of his authority.” And the court goes on to say in the same opinion: “It was not intended * * * that an agreement into which he entered, although beyond his authority, should become binding upon the Government because it was made in the form of an express agreement not executed within the legal manner or of an implied agreement merely — that is, that his authority should be enlarged by the irregularity or informality with which it Avas exercised.”
It does not appear that the depot quartermaster had any authority to enter into this agreement. He had authority to expedite the production of uniforms and clothing which were being manufactured by contractors in Philadelphia. But from that could not be implied an authority to rent and equip buildings. And in this case it appears that the officer *106 entered into no contract as to the amount of the rent and the cost of the equipment, but without knowing what the rent and costs were gave assurance to the plaintiff that future contracts would be given it to compensate it for its outlay, whatever that might be. We do not feel that we can imply that the officer had any such authority. To do so would be giving an interpretation to the Dent Act which is directly in the face of the decision of the Supreme Court of the United States above quoted.
The petition of the plaintiff must be dismissed. It is so ordered.
Graham, Judge; Downey, Judge; Booth, Judge; and Campbell, Ghief Justice, concur.