**GAY STREET CORPORATION OF BALTIMORE, MARYLAND,**

v.

**The UNITED STATES.**

**Congressional No. 3-52.**

United States Court of Claims.

Jan. 11, 1955.

Frank Kaufman, Baltimore, Md., for plaintiff. Marx Leva, Washington, D. C., Frank & Oppenheimer, Baltimore, Md., and Fowler, Leva Hawes & Symington, Washington, D. C., were on the briefs.

Herbert Pittle, Washington, D. C., with whom was Perry W. Morton, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This is a congressional reference case referred to the Court of Claims by House Resolution 566, 82d Congress, 2d session, with instructions to proceed in accordance with sections 1492 and 2509 of Title 28 of the United States Code.

Pursuant to the aforementioned reference the plaintiff has filed its petition in this court seeking to recover damages for failure by the defendant to perform its obligation under a lease of an office building.

Plaintiff is a corporation organized and existing under the laws of the State of Maryland. It is the owner of a six-story building located at 112–114 South Gay Street, Baltimore, Maryland. This building was purchased by the plaintiff in July 1946. It had been used as an office building for many years by its previous owners.

In the summer of 1946, the War Assets Administration, an agency of the United States Government, negotiated with plaintiff for a lease of the building for a period of 21 months beginning October 1, 1946, to June 30, 1948, inclusive, at a monthly rental of $3,750, provided that plaintiff, prior to execution and commencement of the lease, would make a number of specific alterations to the building, at plaintiff's sole cost and expense, so that the premises would be suitable to the needs and desires of the War Assets Administration. Plaintiff made the requested alterations at a cost of $5,505.38. That sum represented the "fair and reasonable cost" of making such alterations.

On October 1, 1946, plaintiff, acting through Henry L. Frank & Company, Inc., a Maryland corporation, its agent, and the defendant, executed a lease containing the foregoing provisions. Pursuant to paragraph 3 of the lease, defendant had the right to occupy the premises to and including June 30, 1951. Pursuant to paragraph 12 of the lease, defendant had the right to terminate the lease on June 30, 1948, or at the end of any fiscal year thereafter by giving plaintiff at least 120 days' prior written notice. The lease did not contain any express provision for termination before June 30, 1948.

By letter of May 14, 1947, the War Assets Administration notified Henry L. Frank & Company, Inc., that it would vacate the building in question on June 30, 1947, because consolidation of its activities made the building in excess of its office space requirements. By letter dated June 2, 1947, the War Assets Administration again notified Henry L. Frank & Company, Inc., that it would quit the premises on June 30, 1947. In that letter the War Assets Administration pointed out that in view of the fact that the United States Government operates on a fiscal year basis and the further fact that funds of the United States Government cannot be obligated for a period extending beyond each fiscal year, the War Assets Administration was serving its notice of termination to be effective on June 30, 1947. No appropriation was available for continuing the lease beyond June 30, 1947.

On June 12, 1947, Henry L. Frank & Company, Inc., notified the War Assets Administration that under the terms of paragraph 12 of the lease the Government had no right to terminate the lease prior to June 30, 1948.

On June 30, 1947, the War Assets Administration vacated the premises and the plaintiff protested this action.

On July 3, 1947, the War Assets Administration acknowledged receipt of the aforementioned letter of June 12, 1947, from Henry L. Frank & Company, Inc. In that letter the War Assets Administration stated, in part:

"The action of this office in surrendering this lease was based on the provisions of Sections 3732 and 3679 of the Revised Statutes [41 U.S.C.A. § 11, 31 U.S.C.A. § 665] and the holdings of the court in the cases of Smoot v. U. S., 38 Ct.Cl. 418; Leiter v. U. S., 271 U.S. 204, 46 S.Ct. 477, 70 L.Ed. 906; and Goodyear Tire and Rubber Company v. U. S., 276 U.S. 287, 48 S.Ct. 306, 72 L.Ed. 575."

By letter of July 26, 1947, Henry L. Frank & Company, Inc., made demand upon War Assets Administration for payment of rent in accordance with the terms of the lease. This demand was rejected by the War Assets Administration by a letter addressed to Henry L. Frank & Company, Inc., dated July 28, 1947.

After the War Assets Administration vacated the premises on June 30, 1947, Henry L. Frank & Company, Inc., as agent for plaintiff, made efforts to mitigate the damages suffered by the plain-

tiff as a result of the loss of rental income for the year July 1, 1947, to June 30, 1948, inclusive. In the first nine months after the premises were so vacated, plaintiff caused more than 20 separate advertisements to be inserted in local newspapers in Baltimore, Maryland, in an effort to rent or sell the premises. In addition, Henry L. Frank & Company, Inc., acting on behalf of the plaintiff, advised other real estate agents in Baltimore of the availability of the property for rental or purchase, and showed and discussed the premises to and with all interested parties including principals and real estate agents. Despite these efforts, neither plaintiff nor its agent received any offer to rent or purchase the premises until 1950. As a result, the premises were vacant during the year July 1, 1947, to June 30, 1948, inclusive.

If defendant had not vacated the premises, and had paid rent as required by the terms of the lease, plaintiff would have received rental income for the period July 1, 1947, to June 30, 1948, in the amount of $45,000. However, since plaintiff would have incurred expenses for operating the building in accordance with the terms of the lease during said period, its net rental income would have been $45,000 less the amount of its operating expenses. The fair and reasonable estimated cost of such operations for the period July 1, 1947, to June 30, 1948, inclusive, is $12,479.43.

After the claim was referred to this court by the House of Representatives, the plaintiff filed its petition in which it alleged the facts substantially as outlined above and requested that the court enter judgment in its favor for $35,666.-50 and interest, or make a report to Congress "confirming the legal and/or moral basis of its claim against the United States in the amount of $35,666.50, and interest. In its brief the plaintiff requests "net damages" of $32,520.57.

The answer filed by the Government admits generally the factual allegations regarding the contract and subsequent transactions, but denies that the plaintiff is entitled to judgment and further denies that the plaintiff is entitled to a report to Congress confirming its claim against the United States.

The questions presented are: (1) whether the United States was obligated for a term extending beyond the fiscal year in which the lease was executed, in the absence of express congressional authorization and in the absence of an available appropriation; (2) if the United States was not legally obligated for the entire term, does the plaintiff have an equitable claim against the United States for the action of its officers in negotiating and executing a contract which was beyond the scope of their authority; and (3) if the plaintiff has a claim, either legal or equitable, is it entitled to interest.

■■ When the lease was executed the War Assets Administration was an administrative branch of the Executive Department, Act of October 3, 1944, 58 Stat. 765, 50 U.S.C.A.Appendix, § 1611 et seq. United States v. Shofner Iron & Steel Works, 9 Cir., 168 F.2d 286. Congress did not authorize it to make leases for a period of more than one year. Therefore, when the lease was executed, the officer of the War Assets Administration who executed it on behalf of the United States did not have any authority to obligate the credit of the United States for a period of time in excess of the then fiscal year, which ended June 30, 1947. This fact is not disputed and is admitted by plaintiff in paragraph 15 of its petition wherein it is alleged:

"It is true that Sections 3679 and 3732 of the Revised Statutes of the United States provide that no agency of the United States Government may obligate itself beyond a current fiscal year without specific congressional authorization. Leiter v. U. S., 1926, 271 U.S. 204, 46 S.Ct. 477, 70 L.Ed. 906; Goodyear Tire and Rubber Company v. U. S., 1928, 276 U.S. 287, 48 S.Ct. 306, 72 L.Ed. 575; and Smoot v. U. S., 1903, 38 Ct.Cl. 418, all hold that there is no basis for prosecuting in the Court of Claims a claim which has arisen by virtue of an 'ultra vires' act committed by a

Government agency. Therefore, it would appear that plaintiff has no remedy open to it in any court of law or in equity which will enable it to recover its damages or any part thereof."

The facts further show that no appropriation was available for continuing the lease for the year following. This court and the Supreme Court in construing sections 3679 and 3732 of the Revised Statutes have consistently held that a lease for more than the fiscal year for which an appropriation may be available is prohibited, Smoot v. U. S., 38 Ct.Cl. 418, and that a lease for a term of years when entered into under an appropriation available for but one fiscal year is binding on the Government only for that year. Leiter v. U. S., 271 U.S. 204, 46 S.Ct. 477, 70 L.Ed. 906; Goodyear Tire and Rubber Company v. U. S., 276 U.S. 287, 48 S.Ct. 306, 72 L.Ed. 575.

Thus, the United States was not legally obligated under this lease for a period beyond June 30, 1947.

It can be reasonably concluded that the present claim is one arising from a breach of an express contract and, therefore, would be within the jurisdiction of this court. This being a congressional reference case, the procedure provided for in 28 U.S.C. § 1492 and § 2509 provides that this court may either enter a judgment for an amount of the claim or report the matter back to Congress with its findings of fact, conclusions of law and recommendations. As noted above, the courts have consistently held that the United States is not legally obligated by the unauthorized action of its agent in executing leases. Thus the plaintiff is not entitled to a judgment as a matter of law since it has no legal claim against the Government.

The next question we are confronted with is whether or not the plaintiff has an equitable claim against the United States.

The defendant says plaintiff does not have an equitable claim against the United States even within the meaning of that term as used in the congressional reference. We are inclined to agree with the defendant insofar as the plaintiff's equitable right to the rentals after the building was vacated by the War Assets Administration.

Negotiations for the lease were conducted on behalf of the United States by employees of the War Assets Administration and on behalf of the plaintiff Henry L. Frank & Company, Inc.

The lease was executed on behalf of the plaintiff by the said Henry L. Frank & Company, Inc.

Considering that the agent for plaintiff was a professional real estate company, it is obvious that plaintiff was represented by experienced business men. It is clearly not an instance where the Government officers were dealing with inexperienced persons against whom knowledge of the legal limitations upon Government officers should not be implied. It cannot be said, therefore, that Government agents took advantage of the plaintiff by not affirmatively disclosing the limitations on their own authority, about which they themselves were apparently unaware.

The courts have consistently held that anyone entering into an agreement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. "And this is so even though * * * the agent himself may have been unaware of the limitations upon his authority." Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10; Whiteside v. United States, 93 U.S. 247, 257, 23 L.Ed. 882; United States v. Holley, 5 Cir., 199 F.2d 575; Reconstruction Finance Corp. v. Martin Dennis Co., 3 Cir., 195 F.2d 698.

In United States v. Willis, 4 Cir., 164 F.2d 453, the Circuit Court of Appeals held that one who deals with an agent of the Government must look to his authority, which will not be presumed but must be established, and one who deals with such an agent cannot rely upon the scope of dealing or upon the apparent authority of such an agent.

This court held in Jacob Reed's Sons, Inc. v. United States, 60 Ct.Cl. 97, affirmed, 273 U.S. 200, 47 S.Ct. 339, 71 L.Ed. 608, and Ferguson v. United States, 60 Ct.Cl. 649, affirmed, 273 U.S. 660, 47 S.Ct. 345, 71 L.Ed. 827, that one dealing with the United States is bound to know and take notice of the limited authority of an officer with whom he was dealing and the court will not imply that such an officer was acting under proper authority.

The United States received no benefit from the premises for the period of time after the premises · were vacated. We agree with the defendant's statement that "it is simply an instance where the uninformed Government agents unintentionally violated statutes enacted by Congress for the protection of the United States and where plaintiff, acting through an apparently competent representative, did not exercise diligence in ascertaining the scope of authority of the Government representatives to the extent required not only by the decisions of the courts, but by ordinary business practice." Furthermore, the record does not disclose that plaintiff could otherwise have rented the property. In other words, plaintiff has not shown that it lost another tenant by reason of the Government's occupancy under the present lease. By the same token, if the Government occupied the building beyond the then fiscal year and then refused to pay rent because of the unauthorized act of its agent in executing the lease, our answer would be a recommendation that Congress pay for the occupancy because the Government received the benefit thereof. This we believe would be equity in its broadest and most general signification as used in the congressional reference.

█ Therefore, even though the term "equitable claim" as used in the congressional reference, is not used in a strict technical sense, the plaintiff does not have a claim even under the broader moral sense based upon general equitable considerations insofar as the claim for loss of rent.

█ However, we believe the claim for requested alterations presents a somewhat different question.

In this connection the Government negotiated for a lease for a minimum term of 21 months, provided the plaintiff would make certain alterations and improvements to the building. The plaintiff made such improvements and alterations at a cost of over $5,500. At the end of nine months the Government vacated the premises and ceased paying rent. It is reasonable to assume that plaintiff would not have expended this amount or made any alterations or improvements except for the opportunity to recoup said sum in the 21 months' rental that would follow. It is also reasonable to conclude that the alterations and improvements were necessary to the Government's occupancy and had they not been made by plaintiff, the expense of such would have fallen on the Government. It would then follow that the expenditure of over $5,-500 by the plaintiff constituted an unjust enrichment on the part of the Government, for which plaintiff should recover.

Plaintiff was unable to recoup said expenditure except insofar as it would be apportioned over the nine months of the Government's occupancy. This would mean that plaintiff was not able to recoup $3,145.94 of his original expenditure and the Government was enriched to that extent. While this is not a claim upon which this court could render judgment, we believe the plaintiff is morally entitled to this amount. The Government reaped the benefit of the expenditure and in good conscience ought to place the plaintiff in approximately the same position as it was prior to the execution of the lease.

██ The next question is whether or not plaintiff is entitled to interest.

It is well established that in the absence of a statute or contract provision to the contrary, interest is not allowable on claims against the United States for breach of contract. United States v. Thayer-West Point Hotel Co., 329 U.S. 585, 67 S.Ct. 398, 91 L.Ed. 521; United

States v. New York Rayon Importing Co., Inc., 329 U.S. 654, 67 S.Ct. 601, 91 L.Ed. 577.

In the light of the above authority it is clear that this court in the present case would have no jurisdiction to award interest even if the plaintiff had a legal claim based upon the contract. It would naturally follow that plaintiff would not be entitled to interest on a claim which is not a legal obligation, and which, if it were, would not entitle it to interest.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.